Adams, J.
The case of Woodward against Curtis is in this court on appeal and has been submitted upon the pleadings and evidence. Without attempting tosíate all the formal allegations of these pleadings — they are familiar to counsel — it is sufficient for the purpose of this decision to recite certain facts. This petition shows that as to many of the formal matters there is no controversy. E. G. Woodward died on the 28th day of March, 1879, leaving as his heirs Sarah L. Woodward, his widow, a daughter by the name of Charlotte, and one son whose name was E. Guy Woodward. Guy died the 27th of April, 1889, leaving these two plaintiffs his sole heirs at law, and Minnie T. Woodward, his widow, and this action is brought by these two minors by their next friend. Woodward’s will was probated the láth day of April, 1879. The widow elected to’ take under the will, and Henry L. Curtis, the executor and trustee named in the will, accepted the *17 trust and duly qualified. Ourtis has filed in the probate court of this county six accounts, the first was filed. May 10, 1882, approved by the probate court August 14, 1882; the second September 26, 1888, approved September 6, 1889; the third was filed September 12, 1892, approved November 11, 1892; the fourth February 2, 1894, and approved April 80, 1894; the fifth account was filed November 27, 1894, and approved January 21, 1895; the sixth and final account was filed June 24, 1895, and approved by the probate court on July 18, 1895. It is set out in this petition that Curtis, as executor, falsely and fraudulently refused and failed to charge himself with or account for two sums of money. $1716,17 and $252,43, and that he should be charged with those amounts in this suit, It was found by the common pleas court that he was chargeable with the value of certain real estate known as the Ironclad property, and the statement, as I understood it, was made by counsel that by an amendment at one time a claim had been made for the value of the property. I am unable to find the specific allegation in the pleadings, but the pleadings are' so numerous it may be there, and we may dispose of it as though there was a claim made. Another claim is made that. Curtis, as executor, filed a suit in the probate court to bring the real estate of E. G, Woodward to sale to pay debts;; that while that suit was pending in the probate court, the allegations are made in detail that he suggested the names of the appraisers to the probate judge; that the property was appraised; that he thereafter resigned as executor of the Woodward estate; that the property was brought to sale by his successor, and that H. L. Curtis bid in the property at public sale for $20,000; they attack that sale as fraudulent, and ask to have it set aside.
The allegation is made in this petition as to a great many of the items of these several accounts that they were false and fraudulent, and that Curtis procured the probate judge. *18 of this county to approve these accounts. I will take up first the matters that are not covered by the six accounts. It was conceded on the trial of the case, and we so find the facts to be, that as to these sums of $1716.17 and $252.43 with which plaintiffs ask to charge Ourtis, as executor, that these were parts of what are known in this case as trust funds that came into the hands of Ourtis before the death of Woodward. I say that it is conceded that he paid out these sums on valid debts of the estate, and by reason of that there is no occasion for an accounting here as to these items. It is said, and what is said here now confirms our examination of these voluminous pleadings, that there is no allegation made as to the Ironclad property, and even if that claim was made, on the proof as given in this court, we could make no finding as to that. We would not be willing to charge Ourtis with the value of that property— nearly twenty years ago' — on the mere statement in a letter that it was worth $1,000, without any proof as to the value of the property since that time; There will be no judgment as to that matter. Now, so far as the sale of the opera house building is concerned, the facts are as I have stated; that Ourtis, being the executor of this estate, filed his petition in the probate court asking to have the property sold for the payment of debts of the Woodward estate; that an order of sale was issued, and it is said here — and I have no doubt correctly — that it was offered for sale and not sold for want of bidders; that thereupon Ourtis resigned as executor of the estate, and it was brought to sale a second time by his successor, and that Curtis, as executor of his father, Henry B. Ourtis, bid in the property for $20,000. It is claimed that that is a grossly inadequate price, and that from the fact that Ourtis had been executor of the estate — that the sale was fraudulent .and void. Now, as we view these facts,there is nothing upon which this court could interfere with the sale of that property. So far as we are advised *19 from the proof, the legal proceedings that brought this property to sale were entirely regular; they were entirely in conformity to law. We think that the property brought what it was fairly worth in the market, and even if it did not bring what it might have brought under more favorable circumstances, that it would not be a ground for 'setting aside the sale by the court ordering the sale, There is nothing in the proof here, and it is not charged that Curtis, as executor, did anything to prevent a fair competition —to prevent all parties who desired to bid from bidding on the property. All other matters that are charged in this petition to be false and fraudulent are covered by these accounts of Curtis, as executor, in the probate court. The claim, as we understand it from the statements of counsel and the evidence, is not that Curtis, except as to these items that I have before referred to — did not charge himself with every dollar of the assets of the Woodward estate that came into his hands, The claim is not that he did not pay out every dollar of the sums that he claims that he paid out in these accounts, and for which he asked and obtained credit in the probate court; but the claim is made that these matters — that he paid out the claim — the Bounds claim, the claim known as the Lucas claim, and the compensation to himself as executor, and a large sum of money that he paid out to Mrs. Woodward, the widow of E. G. Woodward, and a large sum that he paid out in the repair of the opera house — as to all those the claim is made, not that he did not pay them, but that the payments were unauthorized by the terms of the will under which he was acting, and unauthorized by the law. AIL these matters are covered by these accounts in the probate court. The vital question in this case is: What is the effect of a judgment of the probate court approving these accounts ? .And in determining that question, we must examine first as to the jurisdiction of the probate court, and the effect that is to be *20 given to its records. It is said by Judge Shauck in 56 Ohio St., page 270, that
“The eighth section of the fourth article of the constitution ordains that ‘the probate court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlements of the accounts of executors, administrators,’ ” etc.
And section 524 of the Revised Statutes, in specifying the exclusive jurisdiction of the probate court, says:
“Second, to grant and revoke letters testamentary and of administration; third, to direct and control the conduct and to settle the accounts of executors and administrators, and to order the distribution of estates.”
In 26 Ohio St., page 357, it is said that the
“Provision of section 534 of the code of civil procedure, as extended by section 542 to probate courts, do not confer power upon a probate court in proceedings instituted under section 536 to vacate or modify its own orders previously made in the settlements of the accounts of executors and administrators. ”
These sections of the civil code are now sections 5354 and following sections, down to 5365. On page 364 it is said,
“It may, however, be properly added that the act ‘to provide for the settlement of the estates of deceased persons, makes ample provisions for the correction of the accounts of executors and administrators, and the mode of correction and the remedies therein prescribed must ■ be followed within the time and in the manner pointed out.’ ”
Counsel for plaintiffs in this case rely to a very considerable extent upon the case of Reed v. Reed et ah, 25 Ohio St., 422.
“Whether an action is to be regarded as one for the recovery of money only, so as to entitle the parties to demand a second trial under the statute, is not to be determined by the prayer of the petition alone, but depends as well upon the case made or facts stated in the petition. Where .an action was brought by the heirs against the administrator of an intestate, charging that he bad made a fraudulent *21 settlement of his accounts; that he had fraudulently sold the real estate for payment of debts at an under-value, and when such sale was unnecessary; and that upon a fair and full settlement there would be a large sum of money, not less than six thousand dollars, in his hands for distribution; and demanding judgment for said sum of six thousand dollars —held, that this was not an action to recover money only, and that the parties were not entitled to a second trial therein, but to an appeal.”
There is a very brief statement of what the petition charges, and it says that by the sanction and approval of the false and fraudulent settlement of the defendant’s accounts as such administrator — which fraud the plaintiffs had only lately discovered — 'they charge that various items of property and assets were omitted from the inventory; that just charges against the administrator are omitted from the account; that sundry items are credited therein to the administrator which are false and unjust; and that he fraudulently sold the real estate, etc. The facts there, as disclosed by the statement on page 522, differ from the facts in the case at bar in this: In the case at bar all of the items are set out in the account. In the case in 25 Ohio St., it says that just charges are omitted, and property and assets omitted from the inventory; and yet, after all, the vital question decided by the supreme court in that case was whether or not that was an action for money only or not, and they decided that it was not an action for money only, and it is only inferentially-that it can be gathered from that case that the supreme court thought it constituted a cause of action. It was not necessary for the decision of that case.
There is another case in 25 Ohio St., on page 374, of which I wish to quote the syllabus:
“An account rendered by an executor or administrator, and settled by the probate court, is not final so as to bar further inquiry in regard to the assets of the estate in the hands of the executor or administrator not accounted for or passed on. Where such an account has been rendered *22 and settled, the probate court may, at any time within the time limited by the statute, compel the executor or administrator to render a further account of any assets of the estate in his hands not settled in a former account. The'settlement of an account of an executor or administrator by the probate court is conclusive as against parties with actual notice of the settlement of all matters set out and specified therein, and as to such matters the party rendering the account cannot be required to account a second time, unless the same be impeached for fraud or manifest error. In the 27th Ohio St., beginning on page 156, I read on page 160 from the syllabus:
“Where the administrator had filed partial accounts which had been settled by a competent court, and bad thereafter made no further or final settlement with the court, but had settled all demands of creditors, and thereupon, at the request of the heirs, made a full and final settlement with the heirs, in writing, and under seal, of all matters of administration, and thereupon surrendered to the heirs the remaining assets — held: 1. That as to all matters that would have been embraced in a final account with such administrators with the court, such settlement by the parties is final and conclusive, unless impeached. * * * That where the names of infants are signed to such final settlements without lawful authority, they may, on coming of age, if not otherwise debarred, disaffirm the same and compel the administrator to make final settlement in the proper court, Such infants have a plain, adequate and complete remedy at law as to all matters of accounts, and cannot invoke the aid of a court of equity to correct errors or'mistakes in such partial or final settlements until they have exhausted their legal remedy.”
In 54 Ohio St., on page 362, the court say;
“That the power to correct errors of law committed by other courts does not lie within the province of courts of equity.”
In 48 Ohio St., page 273, it is said that
“Probate courts of this state are courts of record, competent to decide on their own jurisdiction and exercise it to a final judgment; and their records import absolute verity. ”
*23 To the same effect is 113 U. S., on page 89. In 56 Ohio St., page 264, and I cite this simply to show the extent and power of the jurisdiction of the probate court—
“The executor who, in the exercise of a testamentary power -to sell lands for the payment of debts, in bad faith sells them for a price that is manifestly less than their true value, should, on examination to his account in the probate court, be charged with the difference between such inadequate price and the true value of the lands ’’
We think that all of the authorities establish the proposition — about which we think there can be no question— that the probate court, as to the matters that come within its jurisdiction, is a court of record, and that its judgments are of the same binding effect as judgments in any other courts, and that those judgments can only be impeached for fraud. And that brings us to the discussion of the question as to what is meant by the impeaching of a judgment for frapd. In Herman on Estoppel, on pages 466 and 467, it is said:
“Fraudulent practices or concealments may be resorted to by an unscrupulous suitor; witnesses may be corrupted or evidence suppressed, and an unjust, unconscientious judgment wrested from the court; these must have been unknown, and reasonable diligence not sufficient to have guarded against them. ‘Were a court of equity, in case of concurrent jurisdiction, to try a cause already tried at law, without the addition of any equitable circumstance to give jurisdiction, it would act as an appellate court, to affirm or reverse a judgment already rendered on the same circumstances, by a competent tribunal. This is not the province of a court of chancery.’ The principle that matters which have received a judicial determination cannot be called again into controversy by the same parties, or their privies, is as obligatory in equity as in law. The adjudication may be founded in error, or may have wrought wrong or injustice; but some special cause for equitable interference — ■ some cause of which the party complaining could not have had the benefit when the judgment was rendered — must be *24 shown, or the judgment will remain a positive bar to future litigation at law or in equity.”
Now, section 6289, of our Revised Statutes relating ‘ to guardians, says that
“Settlement made in the probate court of the accounts of a guardian shall be final between him and his ward, unless an appeal be taken therefrom to the court of common pleas in the manner provided by law, saving, however, to any such ward the right of opening and reviewing such settlement for fraud or manifest mistake by civil action in the court of common pleas of the county in which settlement was made, or the county where such guardian may reside when the petition is filed.”
Now, section 6187, relating to the accounts of executors and administrators, and how opened, provides that
“When an account is settled in the absence of any person adversely interested, and without actual notice to him, the account may be opened on his filing exceptions to the account, at any time within eight months thereafter; and upon every settlement of an acaount by an executor or administrator all his former accounts may be so far opened as to correct any mistake or error therein; except that any matter of dispute between two parties which had been previously heard and determined by the court, shall not be again brought into question by either of the same parties without leave of the court,”
In 42 Ohio St., page 549, it is said that the
“Judgments and orders of the probate court, including the approval of partial and final accounts of guardians, import absolute verity as between the parties thereto, and they cannot be contradicted or questioned collaterally.”
Again, in Herman on Estoppel, page 453,
“It is a well settled principle of equity that fraud vitiates all transactions, even the most solemn,and judgments are not beyond attack on this ground, But judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment, They are not im *25 peachable for fraud relating to the merits between the parties, All mistakes and errors must be corrected from within, by motion for a new trial, or to reopen the judgment, or by appeal. In the language of DeGrey, Chief Justice, ‘If the judgment is a direct and decisive sentence upon the point, and as it stands to be admitted as conclusive evidence upon the court, and not to be impeached from within, yet, like all other acts of the highest judicial authority, it is impeachable from without. Although it is not permitted to show that the court was mistaken, it may be shown they were misled. Fraud is an extrinsic collateral fact which vitiates the most solemn proceedings of courts of justice, ‘The fraud,’ says- the court of appeals of New York, which will justify equitable interference, in setting aside a judgment or decree, must be actual and positive, not merely constructive; it must be fraud occurring in the conception or procurement of the judgment or decree, which was not known to the party at the time, and for not knowing which he was not chargeable with negligence.”
We have examined the opinion in second Nisi Prius, page 27, and we agree in what is said there as to the active fraud in the procurement of the judgment. We are unable to understand what is meant by ‘‘constructive fraud in the procurement of the judgment.” We have examined 41 Ohio St., page 514, and 23 Ohio St., page 415, and while these cases are not strictly in point, yet their general tenor is such as to confirm us in our opinion that the fraud for which a court of equity will vacate a judgment must be a fraud practiced by the successful party in obtaining the judgment. And to that effect is the case in 42 N. J. Elq., 573.
In the case at bar the executor charged himself for all the money he received, and credited himself for no more than he actually paid out. It is not claimed that he did not make the payments as set out in his accounts, but the claim is that they were unauthorized payments. So far as this record goes there is nothing to show that the probate court did not pass on every question here made as to the *26 legality of these items in this account. The presumption is that the probate court has performed its duty, and having passed upon these questions, even if the probate court came to an erroneous conclusion as to matters of law — or as to those matters — it is not for this court or tbe court of common pleas, sitting as a court of original jurisdiction, to reverse the judgment of the probate court because it may differ from that court as to matters of law, or fact.
From all this proof, and under the law as I have stated it, we find, as a matter of fact, that there was no fraud practiced by Henry L. Curtis in procuring the settlement of these accounts, and coming to that conclusion, and holding the law as we do, that terminates this action as between the plaintiffs and the defendants. There will be a decree for the defendants, and the petition dismissed at the cost of the plaintiffs.
Adams, J. We find, as a matter of fact, as I have indicated, that there was no fraud in the procurement of the settlements, and, as we view' it, that ends the case.