**PENGELLY, Plaintiff-Appellant, v. THOMAS, alias Goddard, Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County

No. 3869.   Decided March 8, 1946.

Binns & Tresemer, Columbus, for Plaintiff-Appellant
Waymon B. McLeskey, Columbus, John F. Carlisle, Columbus, for Defendant-Appellee.

## OPINION

By MILLER, J.

This is an appeal on questions of law from a judgment rendered in the Probate Court of Franklin County, Ohio, on the 22nd day of August, 1945. The action was a statutory one brought by a widow to open up the administration of her husband's estate, to set aside the confirmation of final account therein, to give her an opportunity to file exceptions to said account, to require the defendant to account for the assets of said estate, to impress a trust thereon for the benefit of herself and other heirs, and to have an administrator de bonis non appointed. The final account referred to was confirmed on October 2, 1929, and this action was instituted on August 4, 1937, because of the "fraudulent administration" of the estate.

No bill of exceptions is filed with this appeal and the plaintiff is relying solely upon error in the Court's conclusions of law, a motion having been filed for a separate finding of facts and conclusions of law, which was allowed. These facts disclose that Emma Pengelly and Joseph B. Pengelly were married in the City of London, England, on September 16, 1893. These parties lived together in England, together with their three children, until November 5, 1907, when he deserted his wife and family and migrated to South America, where he assumed the name of Arthur Joseph Goddard, which name he continued to use for the rest of his life. On November 4, 1910, he married the defendant herein with whom he lived until his death on December 27, 1927.

He went into business at Columbus, Ohio, with money loaned to him by the mother of the defendant and then later the defendant came into a small inheritance which she also put into the business, which was a going concern at the time of his death.

As Arthur Joseph Goddard he left a will which was duly admitted to probate on January 3, 1928. By the terms of the will the decedent named his wife, Cora I. Goddard, the defendant herein, as executrix, who qualified and performed her duties as such. She elected to take under the will as the widow of Arthur J. Goddard, deceased, and received the widow's allowance as authorized by Ohio law. The will devised and bequeathed all his property to the defendant absolutely in fee simple, naming her as his wife. The defendant, either as an individual or as executrix, had no knowledge whatever that her husband had ever been married before her mar-

riage to him, and knew nothing whatsoever of this marriage until sometime in July, 1932, which was thirty-four months after the confirmation of the final account. The Court found that the property administered in the Probate Court under the last will of Arthur J. Goddard was accumulated after his marriage to the defendant and was so accumulated without any knowledge whatsoever on her part that he was not her husband. The action seeks to vacate the final account confirmed by the Probate Court on October 2, 1929, on the alleged ground that the defendant knowingly perpetrated a fraud on the Court.

The first assignment of error is that the Court erred in sustaining a demurrer to the amended petition for failure to allege scienter in connection with the fraud, mistake and manifest error therein pleaded. The petition failed to allege that the defendant knowingly perpetrated a fraud, so a demurrer was filed, which was sustained. The plaintiff elected to plead further in accordance with the ruling on the demurrer. This assignment of error cannot be considered by this Court for two reasons: First, it is not the judgment upon which this appeal is predicated; second, since the plaintiff elected to plead further, no judgment was entered against her in the entry sustaining the demurrer.

The second assignment of error is that the Court erred in finding (No. 22) as a matter of law, "that there was no tendency to deceive any person, and that there was no person in existence within the knowledge of Cora I. Goddard whom she could have deceived." We are of the opinion that this finding is not only a finding of fact but it also contains a conclusion of law which was wrongfully made. The defendant's repeated representations to the Court in connection with the administration of decedent's estate that she was the decedent's widow, not only had a tendency to deceive the Judge of the Probate Court whose existence was within defendant's knowledge, but did actually deceive him, because it was in reliance upon these false representations on her part that the Court confirmed her account as executrix of decedent's estate, giving her the assets to the injury of the plaintiff, the lawful widow. The defendant was acting in a fiduciary capacity requiring the exercise of the highest degree of good faith toward the Court, and it would be inequitable to permit her to profit by any false representations however innocently made due to mistake, inadvertence or error on her part.

The third assignment of error is that the Court erred as a matter of law in the conclusion (No. 2) "should we set aside the confirmation of the account and permit the lawful wife in England, or her estate, to receive a wife's interest as given by the law * * * we would unjustly enrich her estate." With this theory of the trial court we are not in accord. The laws of this state grant to the widow of the deceased a certain interest in his estate and which if legal cannot be unjust. It is true the record shows that the deceased accumulated his fortune while separated from the plaintiff and while living with the defendant who no doubt assisted him to some extent, but while the deceased was doing this, the plaintiff, probably, had the burden of supporting the family which he had deserted and which was his obligation. Under this theory of the trial Court, if carried to its logical conclusion it would have availed the plaintiff nothing to have appeared in open court during the administration of this estate and presented her widow's claim, for the reason, as the trial Court says in its judgment entry, "should we set aside the confirmation of the account and permit the lawful wife in England, or her estate, to recover a wife's interest as given by the law, it is our opinion that we would unjustly enrich her or her estate." This conclusion is not in accordance with the principles of equity and is contrary to law.

The fourth assignment of error is that the Court erred as a matter of law in concluding (No. 3) "that the Supreme Court of Ohio has held an actual fraud must be pleaded where the allegation is perpetration of fraud on the Court."

We are of the opinion that the right of the Court to vacate or modify a judgment is not limited to a showing that it was procured by fraud, collusion and misrepresentation, but it is sufficient if there is a showing that the rights of interested parties are prejudicially affected by the judgment and if there was inadvertently a withholding from the Court of matters which should have been properly before him, but for which withholding the judgment would not have been rendered. State, ex rel. Hussey v Hemmert, 34 Abs 348. That fraud as a ground for vacating a judgment may be either actual or constructive has been held in numerous Ohio cases as elsewhere.

In Rote v. Stratton, 3 O. Dec., 156, at p. 158, the Court says:

"Constructive fraud, by one standing in a fiduciary and confidential relation to the person affected, will avoid the

settlement of any final account of a trustee, executor or administrator thereby. * * *

Any such final settlement may be attacked in a court of equity in an independent action, upon a complaint that the final settlement was obtained by constructive fraud, or fraud in fact."

In **McAfee v Phillips, 25 Oh St 374**, the Court held that

"The settlement of an account of an executor or administrator, by the Probate Court, is conclusive, as against parties with actual notice of the settlement, of all matters set out and specified therein, and as to such matters, the party rendering the account cannot be required to account a second time, unless the same is impeached for fraud or **manifest error**." (Emphasis ours).

In Griffith v. Godey, 113 U. S., 89, Mr. Justice Field, who delivered the opinion of the Court at p. 93 says:

"It is well established that a settlement of an administrator's account, by the decree of a Probate Court, does not conclude as to property **accidentally** or fraudulently withheld from the account. If the property be omitted by mistake or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises, and take such action as justice to the heirs of the deceased, or to the creditors of the estate may require, even if the Probate Court might, in such case, open its decree and administer upon the omitted property." (Emphasis ours.)

In Kuehner v. Johnson, 34 N. E. (2d), 996, this Court of Appeals, Judge Barnes writing the opinion, says at page 1003:

"Constructive fraud may exist where there is no intent to do a wrong, but the act in contemplation of law is a wrong which makes the contract voidable at the instance of the other contracting party."

A case very similar to the case at bar is found **In re Estate of Shives, 65 Oh Ap 167**, where it was held that a rep-

resentation by a husband's administrator that the husband left no surviving spouse, when, in fact, his wife lived for seven months after his death, was a misstatement of fact, sufficient to constitute a fraud on the Probate Court within the meaning of the statute authorizing the Probate Court to reopen the decedent's estate so as to permit the administrator of the estate of the wife to obtain a widow's exemption and allowance as part of the wife's estate.

The defendant contends that actual fraud must be pleaded and proven before a Probate Court can open up a final account. Citing Woodward v. Curtis, 19 O. C. C. 15; **Crawford v. Ziegler, 84 Oh St 224.** The syllabus in the case of Crawford v. Ziegler, supra, provides:

"After the expiration of the eight months allowed by Section 6187, Revised Statutes, for filing exceptions when the account is settled in the absence of a person interested and without actual notice to him, the judgment of a Probate Court settling the final account of an executor or an administrator becomes absolute and conclusive and cannot be attacked except for fraud of the prevailing party."

We have examined this case and find that the question of constructive fraud was not raised. Either actual fraud had been perpetrated or there was no fraud at all. In discussing this case the Court does make the following statement:

"The judgment of the Probate Court imports absolute verity and can only be avoided by proof of actual fraud."

We are of the opinion that the words "actual fraud" were used since that was the only kind of fraud the Court had under consideration, and it was not used for the purpose of distinguishing it from constructive fraud. However, should we be wrong in our conclusion, we feel that the weight of authority in Ohio is against the holding of these cases that actual fraud must be pleaded and proven.

We have considered and passed upon the question of constructive fraud as the basis for the relief sought. We recognize that the trial court entertained and sustained a demurrer to the petition which was based upon constructive fraud and that thereafter if the issue had been restricted to the pleadings it might be said that constructive fraud was

not involved. However, it becomes apparent from an examination of the findings of fact and conclusions of law that the Court and counsel by common consent did consider and present the issue of constructive fraud. In this situation we are of opinion that the appeal is controlled by the principle announced in **The Younger & Farmer Co. v. Halliday, 107 Oh St 431,** and particularly the second syllabus:

"2. Where a case is tried upon a given theory, and evidence is introduced pro and con upon such theory without objection, it is too late after trial and judgment to raise the question for the first time whether the pleadings warrant such a theory."

The defendant also contends that the Probate Court had no jurisdiction on the subject matter of this action, and if so its power to vacate the judgment confirming the final account was controlled by the old Probate Code and not by the new. This is because the account was confirmed twenty-seven months before the new Probate Code became effective. The defendant contends also that if the new Code does apply, that the same is unconstitutional. It is conceded that prior to the adoption of the new Probate Code on January 1, 1932, the Probate Court had no jurisdiction to vacate this order. However, the Probate Code of 1932 contains this section on the chapter on jurisdiction:

"**Section 10501-17.—VACATION AND MODIFICATION OF JUDGMENTS.** The Probate Court shall have the same power as the Common Pleas Court to vacate or modify its orders or judgments."

This statute was relied upon by this Court, Judge Barnes writing the opinion, holding that the Probate Court has jurisdiction to vacate its orders. The case to which we refer is that of **Abicht, Exr. v O'Donnell, 52 Oh Ap 513,** the syllabus of which reads as follows:

"A Probate Court can, by virtue of §10501-17, GC, vacate or modify its orders and judgments the same as a Common Pleas Court, and as its jurisdiction in that respect is not limited either by the constitution or legislative enactment to statutory grounds only, such jurisdiction includes equitable grounds as well."

Judge Barnes in his opinion very clearly points out the added jurisdiction of the Probate Court by virtue of said section of the General Code, but counsel for the defendant contend that Abicht, Exr., v. O'Donnell, supra, is authority only for a case arising under the 1932 Code and that to apply the statute to this case, where the order confirming the account was made long before the effective date of the 1932 Probate Code, would be running counter to §26 G C and also a violation of the Constitution. However, it must be borne in mind that §10501-17 GC is purely remedial, and as such is not affected by §26 GC. See **Smith v N. Y. C. Rd. Co., 122 Oh St. 45**, which case cites and approves the second syllabus in **Elder v Shaffstall, 90 Oh St 265**, which reads as follows:

"2. This amended section relates to the remedy only and applies to all actions commenced in the common pleas courts of this state on and after the 14th day of May, 1913, regardless of the time when the cause of action arose."

The amended section referred to in the above syllabus provided that in all civil actions a jury shall render a verdict upon the concurrence of three-fourths or more of their number, whereas the former rule required a unanimous verdict of twelve jurors.

As to the constitutional question raised by counsel for the defendant, we find ample authority to support our view that, to grant the relief prayed for in this proceeding, based upon §10501-17 GC, would violate no provision of the Constitution. A late authoritative case, where the constitutionality of an amendment to the statutes concerning remedial rights was questioned is that of **Smith v N. Y. C. Rd. Co., 126 Oh St 451**, the first syllabus of which reads as follows:

"1. A statute which relates exclusively to remedial rights is not within the purview of the constitutional inhibition against the legislative enactment of retroactive laws."

We refer also to **Hatch, Exr., v Tipton, 131 Oh St 364**, wherein the constitutionality of §10510-10 GC was attacked by co-tenants of the real estate sought to be sold by the executrix under the authority of said section of the new Probate Code. The Court, in holding that the Probate Court in the exercise of the added jurisdiction conferred upon it by said

statute, was not violating the constitutional rights of the co-tenants of the real estate, said in its opinion:

"Remedial rights may be modified, altered or entirely extinguished by legislative enactment even though they be retroactive in character and operation.

Defendant's contentions are based on the assumption that their right to statutory partition is a basic and vested property right. However, there is no property in remedial rights. The contention being based upon a false premise, the reasoning is necessarily fallacious and the conclusion erroneous.

In the enactment of the statute in question the General Assembly did not exceed its constitutional power, nor does the statute destroy vested rights. * * *"

**Sec. 10510-10 GC** increased the jurisdiction of the Probate Court to such an extent that it could force a sale of the whole interests of the co-tenants in the real estate which was owned by them before the enactment of this section of the Code, whereas before its enactment the Court of Common Pleas was the only tribunal which had the jurisdiction to grant such relief. It has been generally recognized that the Common Pleas Court had jurisdiction to grant relief against fraud where there was no other relief available. The relief sought by plaintiff could have been obtained from the Common Pleas Court before the enactment of §10501-17 GC. Therefore, this is not a case where the Legislature provided the plaintiff with a remedy where none existed before. See also **In re Chambers, 16 OO, 519.**

For the foregoing reasons we hold that §10501-17 GC, effective January 1, 1932, is determinative and grants jurisdiction to the Probate Court in this matter.

The defendant contends further that the action was not brought within the time limit for the commencement of such actions. The amended petition states that the time when the plaintiff first discovered the alleged fraud, and as her action was commenced within four years after the discovery of the fraud, the action was seasonably brought. See §11224 GC.

For the foregoing reasons the judgment is reversed and the cause ordered remanded for further proceedings.

HORNBECK, PJ, and WISEMAN, J, concur.