Taft, J.
 

 The first judgment by the Court of Appeals was rendered about three weeks after the judgment of this court in
 
 In re Estate of Stafford,
 
 146 Ohio St., 253, 65 N. E. (2d), 701. However, the
 
 Stafford case
 
 was apparently not then called to the attention •of the Court of Appeals and is not referred to in its ■opinion.
 

 The probate judge believed -that, under the decision in
 
 Jones
 
 v.
 
 Harmon,
 
 122 Ohio St., 420, 172 N. E., 151, he was required to apply the law as announced by 'this court in the
 
 Stafford case.
 
 He found that plaintiff’s proceeding was brought in the Probate Court as
 
 *55
 
 an “adversary proceeding,” and that, under the-
 
 Stafford case,
 
 the Probate Court had no authority to give the relief sought in such a proceeding. Because defendant did not call the previously decided'
 
 Stafford case
 
 to the attention of the Court of Appeals-on the first appeal, we prefer to decide this case on. other grounds which were fully presented to the Court. of Appeals on that appeal and to this court on the-first motion to certify.
 

 Plaintiff takes the position that it makes no difference whether this proceeding is regarded as an adversary one or one in rem. Her contentions are:
 

 1. If the proceeding is regarded as in rem, then; Section 10506-40, General Code, authorizes the Probate Court to grant the relief sought; and
 

 2. If it is regarded as an adversary proceeding,, then Sections 10501-17 and 10501-53, General Code,, authorize that court to grant such relief.
 

 Plaintiff alleged actual fraud of the defendant as the basis of the relief sought. If this court should-remand for further proceedings in the Probate Court,, then, according to plaintiff’s contention, the trial should resume where it ended before the first appeal to the Court of Appeals, — that is, at the conclusion of plaintiff’s case.
 

 The record shows that at that time ■ plaintiff had established no actual fraud of defendant. Plaintiff' concedes this but contends that the facts found by the-Probate Court disclosed a case of “constructive-fraud” by defendant, and that such “constructive-fraud” is sufficient to support the claim for relief.
 

 The first question to be considered, therefore, is whether the facts found by the Probate Court, at the-conclusion of the trial before the first appeal, would' justify holding that any representation, concealment,, act, failure to act or other conduct of the defendant, amounted to “constructive fraud.”
 

 
 *56
 
 The Probate Court found, and it is apparently conceded, that until almost three years after approval of her final account, defendant did not know that Goddard, the man who she supposed was her husband, had ever been married before. As a matter of fact, because of this man’s prior marriage and the existence of the woman he then married, defendant was not his wife. However, defendant honestly believed that she was, had every reason to so believe, and had no reason to even suspect otherwise.
 

 On these facts, we see no basis whatsoever for a holding that any of defendant’s representations, to the effect that she was the wife of Goddard, amounted to ‘ ‘ constructive fraud. ’ ’
 

 In holding that plaintiff was entitled to the same measure of relief for “constructive fraud” as for actual fraud of defendant, the Court of Appeals referred to a number of authorities:
 
 State, ex rel. Hussey,
 
 v.
 
 Hemmert,
 
 34 Ohio Law Abs., 348, 37 N. E. (2d), 668;
 
 Rote
 
 v.
 
 Stratton,
 
 2 N. P., 27, 3 O. D. (N. P.), 156;
 
 McAfee
 
 v.
 
 Phillips,
 
 25 Ohio St., 374;
 
 Griffith
 
 v.
 
 Godey,
 
 113 U. S., 89, 28 L. Ed., 934, 5 S. Ct., 383;
 
 Kuehner
 
 v.
 
 Johnson,
 
 33 Ohio Law Abs., 401, 34 N. E. (2d), 996;
 
 In re Estate of Shive,
 
 65 Ohio App., 167, 29 N. E. (2d), 565. Those authorities do not lend any support to the view that the representations made by this defendant involved “constructive fraud.” Apparently that term has been used in connection with conduct which is not actually fraudulent, but which, either because of some statute or for reasons of public policy, is treated in law or in equity as though it had been tainted with dishonesty, bad faith or some improper motive.
 

 In some of the authorities cited, the propriety of equitable relief for mistake as distinguished from fraud is recognized. Admittedly, the action of the
 
 *57
 
 Probate Court in approving defendant’s final account was induced by mistake. The right to equitable relief for such mistake will be considered later in this opinion.
 

 Section 10506-40,
 
 *
 
 General Code, read in part:
 

 “The determination of the Probate Court on the settlement of an account shall have the same force and effect as a judgment at law or a decree in equity * * # and shall be final as to all persons having notice of the hearing, except:
 

 “(b) When an account is settled in the absence of a person adversely interested, and without actual notice to him, it may be opened on his filing exceptions to the account within eight months after such settlement ; and
 

 “(d) In case of fraud or collusion * *
 

 .Plaintiff relies upon the words, “fraud or collusion.” Admittedly there was no actual fraud. The findings of the Probate Court, requested by the plaintiff at the conclusion of her case before the first appeal, negative the existence of “constructive fraud.” The words relied upon by plaintiff can, therefore, be of no help to her in these proceedings.
 

 Section 10501-17, General Code, reads:
 

 “The Probate Court shall have the same power as the Common Pleas Court to vacate or modify its orders or judgments.”
 

 It will be observed that this section deals merely with the vacation or modification of judgments. It does not purport to give the Probate Court any broad equity powers beyond that. However, plaintiff points to Section 10501-53, General Code, providing that “the Probate Court shall have plenary power at
 
 *58
 
 law and in equity fully to dispose of any matter properly before the court.” Plaintiff then argues that, since the proceeding which she brought in the Probate Court involved an effort to vacate or modify an order or judgment of that court, the Probate Court had full power to proceed further and give the same relief which a court of general equity jurisdiction would have been able to give. It is not necessary to decide whether this position of the plaintiff is sound. It is our conclusion that, if this proceeding had been brought by plaintiff as an independent suit in a court of general jurisdiction having full equity powers, the proceeding could not have been maintained successfully.
 

 The reason for the plaintiff relying upon “constructive fraud,” when she found she could not establish actual fraud, is obvious. If the proceeding were one for relief on the ground of fraud, then the four-year statute of limitation would not commence to run until her discovery of the fraud shortly before this proceeding was begun. See Section 11224, General Code.
 

 As hereinbefore pointed out, the plaintiff failed to establish either actual or constructive fraud. It is clear, however, that many of the orders of the Probate Court in the course of administration of Goddard’s estate were induced by mistake. For example, if the Probate Court had known of the prior marriage of the decedent to plaintiff and had known of the plaintiff’s existence, it would not have approved payment of the widow’s allowance to defendant and payment of all decedent’s net estate to defendant.
 

 Since the plaintiff was the widow of Goddard, alias Pengelly, she was entitled to any provision for a year’s support. Furthermore, as surviving spouse she had a right to elect to take under the statute of descent and distribution (Section 10504-55, General Code) and would thereby have been enabled to take one-third of his net estate (Section 10503-4, General Code).
 

 
 *59
 
 The obligation of an executor, to pay to the proper parties any amount for which he is accountable, is an obligation which the law implies irrespective of the intention of the executor. However, such obligation is regarded as one “upon a contract not in writing, express or implied” within the meaning of Section 11222, General Code, so that an action therefore is barred unless brought “within six years after the cause thereof accrued.”
 
 Yearly
 
 v.
 
 Long,
 
 40 Ohio St., 27;
 
 Mount, Admx.,
 
 v.
 
 Lakeman, Clerk,
 
 21 Ohio St., 643;
 
 Douglas
 
 v.
 
 Corry, Exrx.,
 
 46 Ohio St., 349, 21 N. E., 440, 15 Am. St. Rep., 604;
 
 Webster
 
 v.
 
 Bible
 
 Society, 50 Ohio St., 1, 33 N. E., 297.
 

 It may be argued that the ten-year statute of limitation should apply because an effort is made to vacate or modify the orders of the Probate Court on the ground that they were induced by a mistake as to certain facts. See
 
 Bryant
 
 v.
 
 Swetland,
 
 48 Ohio St., 194, 27 N. E., 100. Here, however, such vacation of orders of the Probate Court would be merely one step which plaintiff would be taking in her effort to secure the ultimate relief which she seeks. What plaintiff wants and what she seeks in her petition is recovery from defendant of what plaintiff would have been entitled to from her husband’s estate if her, marriage and existence had been known to the Probate Court when it was administering the estate. In defendant’s final account she claimed credit for payments to herself of the amounts which plaintiff seeks. As hereinbefore pointed out, an action to recover that money from defendant would be barred by Section 11222, General Code, after six years from the time the Probate Court approved defendant’s final account. This proceeding was not commenced by plaintiff until two years after the six years had elapsed.
 

 The defense of the statutes of limitation was raised
 
 *60
 
 ‘by defendant in demurrers and in the answers which ■she filed both in her representative and in her individual capacities.
 

 Pursuant to the provisions of the will, defendant was appointed executrix and authorized to serve without bond, so that it is not necessary to consider whether different limitations would apply if plaintiff was seeking to enforce an executor’s bond.
 

 In reversing the judgment of the Probate Court on the first appeal, the Court of Appeals necessarily held that defendant’s representations to the Probate Court involved “constructive fraud.” As hereinbefore pointed out, such a conclusion was erroneous. Plaintiff contends that, because this court did not allow a motion to certify and did not reverse the judgment of the Court of Appeals, the erroneous conclusion of the 'Court of Appeals became the “law of the ease” and must be regarded as the law on all subsequent hearings in this matter. With this contention we cannot agree.
 

 Defendant sought to have this court reverse the first judgment of the Court of Appeals by filing in this court an appeal as of right and a motion to certify. Defendant took every step- available to her to seek a review of the first judgment of the Court of Appeals. The questions of law being decided by this court were presented to the Court of Appeals on the first appeal and to this court in support of the first motion to certify. There is no reason why defendant should be prejudiced, if then entitled to a judgment of dismissal, merely because this court considered the case as not being one of public or great general interest. The reasons why the doctrine of the “law of the case” should not be applied in such an instance were well ■stated by Allen, J., on page 423, in
 
 Jones
 
 v.
 
 Harmon,
 
 122 Ohio St., 420, 172 N. E., 151.
 

 The judgment of the Court of Appeals is reversed
 
 *61
 
 .and the judgment of the Probate Court dismissing this proceeding is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart and Zimmerman, . JJ., concur.
 

 Turner, J., concurs in the judgment.
 

 *
 

 This section has since been amended (120 Ohio Laws, 653, 121 Ohio-Laws, 276).