# James v. James.

*Bill in Equity by Heirs against Administrator, to enforce Trust in Lands bought and resold at Profit.*

1. *Purchase by trustee or administrator at his own sale.*—A purchase of lands by a trustee at his own sale, or by an administrator when he is not interested in the estate, is voidable at the option of the beneficiaries, seasonably expressed, although he acted with fairness, and made no profit; or they may treat the purchase as made for their benefit, and claim any profit accruing on a subsequent re-sale.

2. *Same.*—It may be that, when an administrator has made an actual sale to a third person, in good faith, at an adequate price, and without collusion, and the sale has been completed and confirmed, leaving no duty resting on him inconsistent with his individual interest as a purchaser, he may purchase from his vendee, and hold the lands freed from any constructive trust in favor of the beneficiaries; but, where the vendee is his near relation, and only a short time intervenes between the sale and re-purchase, he must repel the presumption of indirection and evasion, arising from these facts, by clear and convincing evidence; and if he reports himself to the court as the purchaser at his own sale, and procures a confirmation of the sale, and a conveyance to himself, he cannot be heard to say, when the beneficiaries afterwards seek to enforce a trust on the lands in their favor, that another person was in fact the purchaser at his sale, and afterwards sold and conveyed to him.

3. *Same; what delay bars equitable relief.*—Long acquiescence on the part of the beneficiaries, in a purchase by a trustee at his own sale, if unexplained, is a waiver of the right to impeach it; and in determining what is reasonable diligence, or what is unreasonable delay, each case must necessarily be controlled by its own peculiar circumstances. Where the beneficiaries seek to enforce a constructive trust in the lands, claiming the benefit of a re-sale by the trustee at an increased price, no actual fraud being alleged, they must file their bill within six years after the re-sale, that being the statutory bar to a corresponding legal right and remedy (Rev. Code, § 2901); and if they were infants when the cause of action in their favor accrued (Ib. § 2910), they must file their bill within three years after attaining their majority.

4. *Laches, or lapse of time; how taken advantage of in equity.*—Laches, lapse of time, unreasonable delay or acquiescence, unlike the statute of limitations at law, is available as a defense in equity without being specially pleaded.

5. *Misjoinder of complainants.*—Where several persons join as complainants in a bill, if one of them is barred by laches, lapse of time, or the statute of limitations, no relief can be granted to the others.

[James v. James.]

6. *Averment of ignorance, as excuse for delay.*—When a party relies on his ignorance of facts material to his rights, as an excuse for his laches and delay in asserting them, he must show by distinct averments why he was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry; and must show how and when he first acquired a knowledge of the facts.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filed on the 27th May, 1874, by Mary E. James, James James, and Melissa E. O'Neil, who sued by said James James as her next friend, surviving children and heirs-at-law of Sylvester James, deceased, against Lee L. James individually, who had been the administrator of the estate of said Sylvester James; and sought to enforce against the defendant a constructive trust in favor of the complainants, on account of the purchase by him of a tract of land belonging to said decedent's estate, which he had sold as administrator, under an order of the Probate Court, becoming himself the purchaser, and afterwards resold at a profit. Said Sylvester James died, intestate, in said county of Chambers, where he resided, in 1853, and letters of administration on his estate were duly granted to said Lee L. James on the 14th September, 1853. On the 12th August, 1854, said administrator filed his petition in said Probate Court, asking an order to sell the lands belonging to the estate, on the ground that they could not be equitably divided without a sale; and on the 7th October, 1854, the court granted an order of sale as prayed. The bill alleged that, acting under this order, but without advertising the sale as required by its terms, the administrator sold the lands privately to himself, at the price of $2,452 80, the tract containing four hundred and eighty acres; and that he reported himself as the purchaser, and had the sale confirmed by the court, and a deed executed to himself as the purchaser by E. H. Muse, acting under the order of the court. The defendant denied, in his answer, that he sold the land privately, or that he became the purchaser at his own sale; and averred, on the contrary, that the sale was regularly advertised, as required by the order of the court, and that his father became the purchaser, as the highest and best bidder; also, that his father, not being pleased with the lands on examination, agreed to let him have them at the price bid at the sale, and to lend him the money to settle for the purchase-money with the heirs and distributees; admitting that, on the consummation of this agreement between him and his father, acting under legal advice, he reported himself as the purchaser to the court, by which the sale was confirmed, and a deed executed to himself under its order.

[James v. James.]

The sale was made on the 26th December, 1854, and was reported to the court and confirmed on the 12th January, 1855; but the deed to Lee L. James as the purchaser was not executed until the 16th Nov. 1858. On the 26th November, 1858, said Lee L. James sold and conveyed the lands to Mrs. Mary L. Smith, at the price of $4,800. The bill alleged that the purchase by the administrator was a fraud on their rights, and prayed that it might be declared to have been made in trust for them, and that the defendant might be required to account with them for the profit realized by the sale to Mrs. Smith, and for the rents and profits of the lands during his possession. The complainants were infants when the lands were sold under the order of the court, their respective ages at that time, as stated in the bill, being as follows: Mary E., four years; James, six years; and Melissa E., eight years. The bill alleged that, in November, 1866, before the complainants attained their majority, they removed to Texas, "and have not been in Alabama since that time;" also, "that they never knew that such frauds had been practiced upon them by the said Lee L. James, in his administration of said estate," &c., "until some time during the month of January, 1874, when they first discovered and were informed of such frauds and abuses."

The defendant filed an answer to the bill, averring that, on final settlement of his administration, in August, 1857, he fully accounted for the purchase-money of said lands, and decrees were rendered against him, in favor of each of the complainants, for their respective distributive shares; that the complainants were properly brought in as parties to that settlement, being represented by their guardian *ad litem*, and afterwards received payment in full of the several decrees in their favor; and he pleaded that settlement in bar of the relief sought, and the lapse of time (more than two years) intervening between that decree and the filing of the bill. He also incorporated in his answer a demurrer to the bill for want of equity, because it showed on its face that the complainants were barred by lapse of time, and by their failure to file their bill within two years after the rendition of the probate decree, or within two years after the removal of the disability of infancy.

The chancellor overruled the plea and demurrer, and, on final hearing on pleadings and proof, rendered a decree for the complainants; and his decree is now assigned as error.

GEO. W. GUNN, and WM. H. BARNES, for appellant.—1. A purchase by an administrator, or other trustee, at his own sale, is good, at least until it has been repudiated by the

[James v. James.]

heirs or beneficiaries; and if they seek to impeach it, they must manifest their election to do so within a reasonable time.—*Andrews v. Hobson,* 23 Ala. 219; *Robinson v. Cullom & Co.,* 41 Ala. 693; *Wiswall v. Stewart & Easton,* 32 Ala. 433; *Hawley v. Cranmer,* 4 Cowen, 718; 12 Geo. 594; 23 Geo. 151, 249. If the complainants had brought themselves within the general rule which they sought to invoke, they would be barred by their long acquiescence and delay.

2. But the pleadings and proof show that this was not a purchase by an administrator at his own sale. The sale was regularly made, at a fair price, without any collusion; and the administrator took the purchaser's bid to avoid the expense of a re-sale, and acted under legal advice in reporting himself as the purchaser. The sale was regularly confirmed, and the purchase-money distributed and paid over under the decree of the court. The distributees now seek by their bill, indirectly, to set aside or annul this probate decree, long after the statutory bar (Revised Code, § 2274) has run against them.

Wm. H. Denson, *contra.*—1. A purchase by a guardian or trustee at his own sale, or by an administrator having no interest in the estate, even if it was fairly conducted, may be set aside by the *cestuis que trust,* without showing any actual injury to their rights; or they may, at their election, have it declared a trust for themselves, and claim the profit on a re-sale.—*Andrews v. Hobson,* 23 Ala. 235; *McLane v. Spence,* 6 Ala. 894; *Montgomery v. Givhan,* 24 Ala. 568; *Charles v. Du-Bose,* 29 Ala. 370; *Frazer's Executor v. Lee,* 42 Ala. 25; *Saltmarsh v. Beene,* 4 Porter, 291; *Calloway v. Gilmer,* 36 Ala. 354; *Cunningham v. Rogers,* 14 Ala. 149; *Michaud v. Girod,* 4 How. U. S. 503; *Davone v. Fanning,* 2 John. Ch. 252; Perry on Trusts, §§ 197, 427–8, 433, 205, 224; Adams' Equity, 161; 1 Story's Equity, §§ 321–2; 2 Sugden on Vendors, 412, and notes; 1 Lead. Cases in Equity, 125–69. Nor can the trustee escape the operation of this principle, by the intervention or agency of a third person, as the nominal purchaser at his sale; for the law will not tolerate such an evasion, nor will it permit that to be done indirectly which it prohibits when done directly. In this case, moreover, the trustee is estopped from setting up such defense, having reported himself as the purchaser to the court, under oath, and having had the sale confirmed to himself as the purchaser.

2. When relief is sought on the ground of fraud, the statute of limitations commences to run from the discovery of the fraud, and the suit must be brought in one year.—Revised Code, § 2916; *Kane v. Bloodgood,* 7 John. Ch. 122. Here, the

complainants filed their bill within four months after the discovery of the fraudulent acts against which they seek relief, and thus brought themselves within the letter of the statute. But the statute of limitations does not apply to the case. They seek relief against a trustee, for fraud in the management of the trust estate; and in such cases, the rule is settled, that they may file their bill within twenty years from the time when he last recognized the trust.—*Blackwell v. Blackwell*, 33 Ala. 57, and authorities there cited. That an executor or administrator is, in equity, a trustee for heirs, legatees, and creditors, see 2 John. Ch. 252; 4 How. U. S. 555; Rorer on Judicial Sales, 136; Angell on Limitations, 163-65, and notes. The doctrine of laches, or reasonable diligence, applies only to trusts arising by construction or implication of law, and cannot be invoked by an executor, administrator, or other express trustee.—*Shaver v. Radley*, 4 John. Ch. 310; *Decouche v. Savetier*, 3 John. Ch. 216. A trustee cannot, by any act on his own part, strip himself of the character of trustee, until he has performed the trust.— *Johnson v. Johnson*, 5 Ala. 98; *Chalmer v. Bradley*, 1 Jac. & W. 51.

BRICKELL, C. J.—This case is not of intrinsic difficulty, but its consideration is embarrassed by inappropriate and, in some respects, insufficient pleading, and the introduction of much irrelevant matter, tending to obscure the questions really at issue. A demurrer to the bill was interposed, assigning ten different causes, several of which rest upon the hypothesis, that the bill is filed under the statute (Revised Code, § 2274) for the correction of errors occurring in the final settlement of an administration made in the court of probate. Yet such is not the purpose of the bill, and it contains no averment as to the existence of such settlement, or of any error therein. In this respect, the demurrer is founded on matter introduced by the answer, and not on matter apparent on the face of the bill. Several of the other grounds are not assigned with the particularity which the statute requires, and, for that reason, cannot be entertained. A plea is interposed, averring that the appellant had made a final settlement of his administration in the court of probate, and that more than two years after such settlement, and after the termination of the disability of infancy, under which the complainants labored at the time of the settlement, had elapsed before the filing of the bill. The plea is founded in a misconception of the purposes of the bill, of the rights which the complainants assert, and of the character of relief to which they may be entitled. It is not sought to correct any error

intervening in the settlement of the appellant's administration, nor to disturb the validity and conclusiveness of the decree rendered by the court of probate. The whole object of the bill is the assertion and enforcement of a constructive trust upon a purchase of lands made by the appellant while administrator, and which were sold by him, in his representative capacity, under the decree of the court of probate. The trust is exclusively a matter of equitable jurisdiction, of which the court of probate had no cognizance, and which was not involved in, or affected by, the decree rendered by that court on the final settlement of the appellant's administration. We pass from the further consideration of the plea and demurrer, to the facts of the case, as shown by the pleadings and proofs.

1. There is no controversy about the general principle the bill is intended to invoke. A purchase by a trustee, at his own sale, at the option of the *cestuis que trust*, seasonably expressed, is voidable, and will be set aside, though he may have acted with fairness, and made no profit. Or, if, after such purchase, he should resell for an increased price, a court of equity permits the *cestuis que trust* to treat the purchase and sale as having been made for their benefit, and will decree to them whatever of profit he may realize.

2. It is insisted, this case does not fall within the operation of this principle—that the appellant was not a purchaser at his own sale, but a subsequent *bona fide* purchaser from his vendee. It may be that, after a fair, actual sale to a third party, a trustee may purchase of his vendee, and the purchase will be free from the infirmity of a purchase made at his own sale, and not subject to any trust in favor of the *cestuis que trust*. Strong presumptions of indirection, and effort to evade the general principle, necessarily attach, if the purchase is recent after the sale made by him, and the vendee is his near relation; which must be fully repelled, by clear and convincing evidence of the absence of all concert or collusion, and of the fairness of the original sale, and the adequacy of its consideration.—*Obert v. Obert*, 2 Stock. Ch. 98; *Johnson v. Kay*, 8 Humph. 142. The sale made by him must, under all circumstances, have been complete, and no duty resting on him, the faithful performance of which is inconsistent with his interest as a purchaser of the property. The foundation of the principle is the equitable maxim, that by no dealing with the trust estate shall a trustee acquire for himself personal, individual profit—the duty of exercising, for the benefit of the *cestuis que trust*, all the rights, powers, knowledge, and advantages of every description, which he may derive from his position—the necessity of removing all temptation

to employ these for his own gain; and it must apply so long as the relation continues, and the relation of purchaser would be inconsistent with it.

The appellant, having reported to the court of probate that he was the purchaser of the lands, at the sale made by him under the decree of the court, and on the report obtained confirmation of the sale, and procured a conveyance to himself as such purchaser, under the decree of the court, cannot now be permitted to deny the fact, and evade the responsibilities resulting from it. Nor was he, at the time he was substituted as purchaser, capable of making a purchase, which would have been indefeasible against the *cestuis que trust*, and which a court of equity would not regard as clothed with a trust for them. In many respects, his vendee was merely a bidder; the sale was inchoate, and its completion dependent on the confirmation of the court of probate. It was his duty to report the sale for confirmation; and if the price did not approximate, or was greatly disproportionate to the value of the lands, to resist confirmation, and insist on a re-sale. As a purchaser from the bidder, his interest was confirmation, though the price may have been disproportionate to the value of the lands; and the greater the disproportion, the greater his individual gain. Duty as trustee, and interest as purchaser, were directly in conflict, and the purchase was within the spirit, policy, and reason of the principle, and the mischiefs against which it is directed. It may be the facts will not justify the suggestion of actual or intentional fraud, and that the sale was fair, for a full price, and confirmation would have been the duty of the court of probate. As was said by PEARSON, J., in *Brothers v. Brothers*, 7 Ired. Eq. 156, the court relieves against such purchases, "not because there is, but that there may not be fraud." The principle is not remedial, but preventive of wrong; and no inquiry into the facts of a particular transaction is made. If it falls within a general principle, whether any injury has resulted to those having beneficial interests, is not material. They have a clear legal right to avoid the sale, or to treat it as made for their benefit, and claim whatever of profit may have been derived from it by the trustee.

3. Long acquiescence in the purchase, of which no just and reasonable explanation is offered, disables the *cestuis que trust* from coming into a court of equity to avoid the sale, or to assert that it was in trust for their benefit.—1 Lead. Eq. Cases, 236, 258; *Campbell v. Walker*, 5 Vesey, 678; *Hawley v. Cramer*, 4 Cowen, 718; *Wade v. Pettibone*, 11 Ohio, 57; *Scott v. Freeland*, 7 Smedes & Mar. 409; *Ashurst's Appeal*, 60 Penn. 54, 315. The condition on which the court becomes ac-

tive for his relief is, that he apply within a reasonable time after he has information of the facts on which the right depends. Unexplained acquiescence is a waiver of the right, operating as evidence of the confirmation of the act of the trustee. The authorities have not defined, and it is said, generally, that it is not practicable to define, what delay will be unreasonable, authorizing the presumption of a waiver of the right to impeach the purchase by the trustee, and of confirmation, or an election to consider it valid. Each case is necessarily controlled by its peculiar circumstances. In the present case, the relief sought is not an avoidance of the purchase by the trustee. The assertion is, that, in the contemplation of a court of equity, it was, at the election of the *cestuis que trust*, in trust for their benefit. It was, however, a *constructive*, not an express trust. It is "superinduced upon the transaction by operation of law, as matter of equity, independent of the particular intention of the parties."—2 Story's Eq. §§ 980, 1176. The recovery sought in this case is pecuniary, not of property, or its possession. The uniform course of decision in this court has been, that such trusts are within the operation of the statute of limitations, and all remedy for their enforcement barred by the limitation which would bar a corresponding legal right and remedy in courts of law.—*Maury v. Mason*, 8 Port. 20 ; *Tarleton v. Goldthwaite*, 23 Ala. 346 ; *Martin v. Br. Bank Decatur*, 31 Ala. 111. In the absence of circumstances excusing or explaining the delay, acquiescence by the *cestuis que trust*, in the purchase and re-sale by a trustee, of the trust property, for his individual benefit, if actual fraud does not taint the transaction, for the period which, under the statutes of limitations, would operate a bar to the assertion of the trust implied by a court of equity in their favor (if the statute was pleaded as a defense), must be deemed unreasonable, disabling them from coming into a court of equity for relief. From the acquiescence, a waiver of the right, and an election to accept the purchase and re-sale as for the individual benefit of the trustee, and not as for their benefit, will be presumed.—*Scott v. Freeland, supra; Ashurst's Appeal, supra; Boone v. Childs*, 10 Peters, 223 ; *Keyton v. Keyton*, 20 Mo. 530. It is to this class of cases a court of equity applies most rigidly the maxim, that reasonable diligence must concur with conscience and good faith.— *Johnson v. Johnson*, 5 Ala. 91.

It is no longer a question whether a court of equity obeys the statute of limitations, or adopts it by analogy. The statute expressly declares, that the limitation of suits at law shall apply to suits in chancery.—Revised Code, § 3381. If the right now asserted was legal, and the remedy pursued in

[James v. James.]

a court of law, it would be in form an action for use and oc-
cupation, and for money had and received, barred by the
lapse of six years from the time the cause of action accrued.
The cause of action accrued in November, 1858, when the sale
and conveyance was made to Smith. If the appellant had
pleaded the statute, or incorporated it as a defense in the an-
swer, two of the complainants, Melissa E. and John James,
would have been barred. More than six years elapsed after.
Melissa E. was freed from the disability of infancy, and more
than three years after the majority of John, before the bill
was filed. The cause of action having accrued during their
infancy, and the period of limitation having run, the statute
allows them only three years, after attaining full age, to bring
suit.—Revised Code, § 2910.

4. Acquiescence, unreasonable delay, is not, like the statute
of limitations, a special defense, which must be pleaded to be
available. It arises on the pleadings and proofs, and the
court acts upon it, because the party affected by it does not
bring himself within the principles on which the right to re-
lief is founded.—*Fisher v. Boody*, 1 Curtis, 219; *Badger v.
Badger*, 2 Wall. 87.

5. The general rule in equity is, that all the parties com-
plainant to a suit must be entitled to relief, or the suit will
fail. If the statute of limitations operates a bar to one, the
others cannot recover.—*Hardeman v. Sims*, 3 Ala. 747; *Wil-
kins v. Judge*, 14 Ala. 135; *Vaughn v. Lovejoy*, 34 Ala. 437.
Under the bill, as now framed, no relief can consequently be
obtained by the complainant Mary E., whose infancy pro-
tected her from the imputation of laches, and who had not
been of full age for three years prior to the filing of the bill.
Under our liberal statute, she may, however, amend the bill,
so as to adapt it to the state of proof, and the equity of the
case. We say nothing of the terms on which such an amend-
ment should be allowed, leaving the chancellor, if applica-
tion is made for amendment, to prescribe such terms for its
allowance as may seem equitable.

6. We have not overlooked the averment of the bill, that
the complainants were ignorant of the facts on which their
right to relief is founded, until a few months before filing the
bill. If the complainants were ignorant of the facts, and of
their rights, acquiescence and unreasonable delay would not
be imputable. Knowledge of the facts which entitle to re-
lief, and a want of diligence in acting upon it, must coexist,
to authorize the presumption of a waiver of the right.—1
Lead. Eq. Cases, 236. But the averment of ignorance is not
supported by evidence; and the fact itself is inconsistent
with the undisputed evidence found in the record. The pub-

licity of the whole transaction, apparent as the greater part of it was on the records of the court of probate; the registration of the conveyance from the appellant to Smith, reciting its real consideration, for more than fifteen years; the change in the possession of the lands immediately on its execution; the residence of the complainants, until 1866, near to the lands, and their relationship to the appellant, and to Smith, render the averment of ignorance almost incredible, especially when the complainants offered no evidence in support of it. But, by no mere general averment of ignorance, can a party account for long delay and acquiescence. By distinct averments he must show why he was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry. He must show how and when he first came to a knowledge of the facts, or the court "may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer, or formal plea of the statute of limitations, contained in the answer."—*Badger v. Badger*, 2 Wall. 87; *Fisher v. Boody*, 1 Curtis, 206; *Carr v. Hilton, Ib.* 390; *Stearns v. Page*, 7 How. 819; *Martin v. Br. Bank Decatur*, 31 Ala. 111.

Reaching the conclusion that two of the complainants are not entitled to relief, and this excluding relief to the other complainant, under the bill as now framed, it is unnecessary to consider other questions which have been presented. If they arise in the further prosecution of the suit, it will probably be under different circumstances.

The decree of the chancellor must be reversed, and the cause remanded.