# Humes, *et als. v.* Scott.

### *Bill in Equity to recover Trust Funds.*

1. *Lien upon property seized under judicial process; effect of replevin bond.*—Where property is seized under judicial process and replevied, the lien is not thereby destroyed, since the property remains in the custody of the law until the bond is forfeited.

2. *Same; same; express trust.*—A party receiving property under a replevin bond when the same has been seized under judicial process holds it in express recognition of the rights of the plaintiff and, in the strictest sense of the word, is a trustee of an express trust.

3. *Same; same; case at bar*—Where a mortgagor replevies property seized under a bill to foreclose and enters into an agreement with the sureties on the bond to deposit the proceeds of the property when sold to the credit of one of the sureties as trustee for himself and the others, such an agreement creates an express trust in favor of the complainant in the bill entitling him to follow and recover such proceeds in the event of a successful termination of the foreclosure suit.

4. *Same; same; same; following trust funds in the hands of third parties.*—In such case where a part of the proceeds thus deposited has been paid to third parties under an agreement to refund the same "when it shall be judicially determined that said bondsmen shall be liable and have the same [the money] to pay" the complainant or real owner of the decree may subject such amount in the hands of such third

parties,—they having received the same with knowledge of its trust character.

5. *Same; same; same; release of sureties; assignment of contract.*—In such case where the complainant releases the sureties on the replevy bond in consideration of the surrender of certain property insufficient to pay the decree and the assignment of such contract to the real owner of the decree, such owner may maintain bill against the parties who have received the funds in recognition of the trust since the agreement of release expressly preserves the obligation to refund.

6. *Same; same; same; stale demand; statute of limitation.*. When the bill in such case is filed within six years from the judicial ascertainment of liability upon the bond, it is not subject to the objection of staleness or the statute of limitations, since it is filed to enforce an express trust and not one created or imposed by operation of law.

7. *Same; same; same; adequate remedy at law.*—The complainant in such bill has not an adequate remedy at law, as equity has original and exclusive jurisdiction in all matters involving trusts.

APPEAL from the Chancery Court of Morgan.

Tried before Hon. W. H. SIMPSON.

In June, 1889, John F. Scott filed his bill in the city court of Decatur against Mary W. Cotton to foreclose a mortgage upon a stock of goods which he had sold to said Mary W. Cotton upon credit. The goods were seized under a writ of seizure and replevied by the respondent, with R. P. Baker and others as sureties. The respondent entered into an agreement with Baker as trustee for himself and the other sureties by which she agreed to deposit the proceeds of the sale of the goods in bank to the credit of Baker as trustee as aforesaid to protect him and the others from liability on the replevy bond. Some of the goods were sold and the proceeds deposited in accordance with the agreement. Subsequently, in 1889, Baker paid to appellants the sum of one thousand dollars, part of said proceeds, under an agreement by which said sum was to be refunded "when it was judicially determined that said bondsmen shall be liable and have the same to pay to said Scott by reason of their suretyship on said bond." At the November term, 1892, of the Supreme Court of Alabama, Scott ob-

[Humes, *et als.* v. Scott.]

tained a final decree in his favor. Subsequently said Scott released the bondsmen upon the surrender of a portion of their property, which was insufficient to pay the decree and the assignment of the above obligation from appellants. The decree remains unpaid. This bill is filed by appellee, who alleges that she was the owner of the stock of goods sold to Mary W. Cotton, and that John F. Scott acted as her agent in selling the same and taking the mortgage therefor, and that she is the real owner of the same, and the decree, together with the agreement above stated which had been transferred to her. This bill was filed in March, 1897. The appellants demurred to the bill upon the grounds that the bondsmen have not paid nor had to pay the sum received by appellants, and because the same is a stale demand, is barred by the statute of limitations, and complainant has an adequate remedy at law. This demurrer was overruled. It further appears from the bill that the sureties on the replevy bond are insolvent. The other facts appear in the opinion.

From the decree overruling the demurrer respondents appeal and assign the same for error.

WATTS, TROY & CAFFEY, for appellants.—(No brief came to the hands of the reporter.)

THOS. C. MCCLELLAN and W. R. FRANCIS, *contra.* The appellee's lien under the attachment was not destroyed by the replevy.—*Woolfolk v. Ingram,* 53 Ala. 11; *Rhodes v. Smith,* 66 Ala. 174; *Cordaman v. Malone,* 62 Ala. 556; *Scarborough v. Malone,* 67 Ala. 570.

The unqualified release of one or more of the sureties, even at common law, only discharged the other sureties *pro tanto.*—*Pegram v. Riley,* 88 Ala. 399; *Cummings v. May,* 91 Ala. 233. Of course, the release of insolvent sureties is no injury to the others. The latter are then merely bound for a larger proportion of the general liability.—Authorities *supra.*

But, under the Code (1886) § 2774, the release can have only the effect intended by the parties thereto. *Smith v. Gayle,* 58 Ala. 600. What the parties to the release intended is too clear for controversy. The

three sureties actually transferred all their rights in the premises to John F. Scott, whose rights the appellee has.—*Troy v. Smith,* 33 Ala. 469; Sheldon on Subrogation, 89; Brandt on Sur. 283; *Carlisle v. Wilkin's Admrs.,* 51 Ala. 371.

The partial assignment of obligations gives no right of action at law.—*Pleasants v. Erskine,* 82 Ala. 386; *Kansas City R. R. Co. v. Robertson,* 109 Ala. 296.

TYSON, J.—The replevying of the property did not operate to relieve it from the lien created by its seizure under the writ. A replevy is intended merely as "an inexpensive method of preserving the property until it is wanted for the payment of the judgment that may be rendered, and until the bond is forfeited, the property remains in the custody of the law, and the lien is unimpaired."—*Kyle v. Swem,* 99 Ala. 573; *Cordaman v. Malone,* 63 Ala. 556. A party receiving property under a replevy bond, like a bailiff or a pledgee, holds it in express recognition of the rights of the plaintiff in the suit. He may be said, in the strictest sense of the word, to be a trustee of an express trust. While entitled to the possession of the property until a determination of the cause in favor of the plaintiff, he is not the owner of it. The right of the plaintiff to subject the property is recognized by him—a recognition, it is true, imposed on him by his right to its possession. But it is actual and voluntary and not "superinduced upon the transaction by operation of law, as matter of equity, independent of the particular intention of the parties," and is, therefore, not an implied or constructive, but an express trust.—*James v. James,* 55 Ala. 532; 1 Beach on Trusts, §§ 1-86.

In this csae, there was a mortgage lien on the goods seized and replevied by the mortgagor. It is scarcely necessary to say that the mortgagor in possession was a trustee for the mortgagee, and when the mortgagor obtained the possession of the goods under her replevy bond, after seizure, she did not absolve that relation, but became also trustee under the bond. Her possession by virtue of the bond made her bailiff of the goods. So

then when she, as mortgagor and bailiff, converted them, there was a double liability on her to make good the loss —one, arising from her character as mortgagor, the other upon her replevy bond. Appreciating her obligation, and in order to save her sureties on the bond harmless, she placed the proceeds of the property replevied and sold by her in the hands of Baker, one of her sureties, to answer its terms, if the suit should be decided adversely to her. The effect of this transaction was to create an express trust, under which Baker, the recipient of the money, engaged to hold the funds to answer the purposes of the suit. Had the court in which that case was being litigated been made acquainted with the fact that the replevied property was being converted by Mrs. Cotton, the mortgagor respondent, and that the proceeds were being or had been placed with Baker for his and her other sureties' indemnity, it would doubtless, if requested by the complainant mortgagee, have required Baker to pay the money into court or to have given security for its forthcoming upon a termination of the suit. For Mrs. Cotton had no right to sell the property. But, having sold it, the proceeds of such sale, when deposited with Baker by way of substitution, took the place of the property. As the complainant mortgagee in the suit would have had the right to claim the proceeds of the property in the hands of Mrs. Cotton as trust property, when the latter in effect recognized this right and voluntarily placed this money in her surety's hands to meet the exigencies of the suit, though it may have been nominally for his indemnity, she created an express trust for the complainant in the event of success. And it was in this relation Baker held the money when Humes and others, on the 14th day of December, 1889, obtained one thousand dollars of it, under a written agreement containing the following stipulation, to-wit: "to return and pay back to Baker, trustee, for the indemnity of said bondsmen said sum of $1,000, in the event said cause (the suit to foreclose and in which the writ of seizure was issued) should by the complainant be appealed to the Supreme Court of Alabama and reversed and said bondsmen should in any event become liable by virtue of proceedings on said

mortgage to said John Scott. Said money to be re-
funded when it shall be judicially determined that said
bondsmen shall be liable and have the same to pay to
said Scott, by reason of their suretyship on said bond."
The foreclosure suit having terminated favorably to the
complainant, and the bondsmen on the replevy bond
having become liable, the complainant in this cause, who
was the real owner of the mortgage sought to be fore-
closed in the name of her husband, filed this bill against
him and the parties who obligated themselves to return
the thousand dollars obtained from Baker, to require the
payment of that money to her, she having acquired by
transfer the written obligation given for its repayment.
The final decree in the foreclosure suit was affirmed
by this court, upon appeal and supersedeas, at the No-
vember term, 1892, and this bill was filed in March,
1897. The respondents, who obtained the return of
the $1,000 received by them from Baker, demurred to
the bill upon various grounds and prosecute this ap-
peal from the decree overruling their demurrer. The
first, second and fifth assignments of demurrer raise
the point that the condition of the obligation to refund
the money had not transpired, in that, the sureties on
the replevy bond have not had to pay or paid the said
sum of one thousand dollars and have not been damni-
fied. This misconceives the terms of the agreement,
which was to repay "when it shall be judicially deter-
mined that said bondsmen shall be liable and have the
same [the money] to pay to said Scott." It was so
determined and so the obligation to refund existed by
the very terms of the writing.

The third, fourth and ninth assignments insist that
the bondsmen were released and discharged from lia-
bility in respect to the thousand dollars, and that they
(the appellants) are no longer liable on their contract.
It appears that, after the final decree in the foreclosure
suit, and the liability of the appellants to refund had
become fixed, the complainant in that suit, in consid-
eration of the transfer of the contract or obligation of
the appellants and of other property possessed by them
subject to execution, released and discharged the sure-

ties on the replevy bond from "any and all further lia-
bility to me [him, Scott,] on, under or by virtue of
the said forthcoming bond or said decree." It is clear
to us, that there is no escape from liability to refund
the money on this point. The assignment of the obliga-
tion to refund preserved the liability and operated to
except it from the release in so far as it involved the
liability of the sureties on the replevy bond. So then,
it may be said that by the terms of the release the lia-
bility on the bond was expressly excepted, at least, to
the extent of the obligation assigned.

The other assignments make the defenses of staleness,
limitations, and that complainant has a plain, adequate
and complete remedy at law.

This bill is one to follow trust property originally
belonging to the complainant as mortgagee, which was
returned to the mortgagor as bailiff under the replevy
bond and converted by sale into money by her, and de-
posited to meet the judgment. The appellants received
a portion of this money, acknowledging in writing
its trust character, and promising to pay it when-
ever the liability of the sureties on the replevy bond
was judicially determined. The purpose and intention
as evidenced by the contract of repayment was to re-
store the trust fund to the trustee, Baker, to be appro-
priated by him to the payment of the mortgage debt
as ascertained and enforced by the decree in the fore-
closure suit. It was not money which Baker could dis-
pose of to the appellants, and the essence of their obli-
gation was and its proper construction is, that they re-
ceived the money in trust to be held by them for the
payment of the mortgagor's debt, *pro tanto,* when judi-
cially detemined against the sureties on the replevy
bond. In other words, they as recipients of the money
from Baker understood and recognized his trust, which
was to hold the money as proceeds of mortgaged prop-
erty for the payment of complainant's debt if he suc-
ceeded, and the terms of their engagement, properly con-
strued in connection with all the attendant facts, made
them stand with respect to the complainant in the shoes
of Baker in so far as the money received by them is
concerned. There was nothing adversary whatever in

the conduct of the appellants prior to the rendition of the final decree in the foreclosure suit: Until then, they stood under the express terms of their contract precisely as Baker. They were bound under their agreement to make good the trust money received by them if necessary to a discharge of the mortgage debt and no one but the complainant in that suit could release them from that obligation.

The case, then, is equitable in all its features. And the bill is neither open to objection of staleness nor limitations. It was filed within six years after the final decree in favor of the complainant in the foreclosure proceedings, when by the terms of the appellant's contract, this complainant became entitled to call on them for this money. These appellants have no right to impute to their conduct in receiving the trust fund a character opposed to what it appears to have been by the terms of their written obligation. They cannot now say they acted tortiously and in contravention of the trust, and that they can only be held by construction of law, when they acknowledged the trust and obtained possession of the money on the express condition to refund it on the determination of the litigation. It would be opposed to all ideas of justice to permit parties receiving trust funds under an agreement to refund, when needed for the exigencies of the trust, to successfully insist that the statute of limitations began to run in their favor before that event happened.

We will presume complainant's assent to the transaction by which the proceeds of the mortgaged property were placed in Baker's hands, since it was one for her indemnity and benefit.

The money in Baker's hands was, in equity, essentially the complainant's, and the appellant's reception of a portion of it being in express recognition of Baker's trusteeship, their obligation to repay here sought to be enforced, is voluntary and contractual and in no sense a constructive trust barred by limitations commencing to run on the reception of the money.

There is no error in the record, and the decree is affirmed.