(94 South. 764)

**BRODY v. MARIL.** (6 Div. 561.)

(Supreme Court of Alabama. Nov. 16, 1922.)

**1. Partnership ⬥321—Suit for accounting and settlement barred after six years from last transaction.**

A suit for an accounting and settlement of partnership affairs is effectually barred when it is not brought until more than six years have elapsed since the last partnership transaction.

**2. Partnership ⬥327(1)—In suit for accounting, held that, if allegations were true, complainant had a clear legal remedy, and there was no equity in the bill.**

If, in a suit for an accounting, allegations showing that there was a discontinuance of the business, and that it was then ascertained that $16,000 was distributable between the partners, and that, after sundry payments had been made to complainant, a balance of $6,-000 was still due him, are true, complainant had a clear legal remedy for the recovery of the ascertained balance and there then was no equity in the bill.

**3. Partnership ⬥327(5)—Amended bill in suit for partnership accounting held demurrable because self-contradictory and uncertain.**

Where the original allegations of a bill in a suit in equity for partnership accounting showed a discontinuance of partnership business and ascertainment of the balance distributable, and the bill as amended alleged, without modifying the original allegations, that defendant "claims" to have tendered to complainant a complete account of the partnership and to have settled accordingly, but that such statement by defendant was false, the conclusion being that, by reason of various fraudulent concoctions and omissions, the true amount of partnership assets was $30,000, half of which belongs to complainant, the amended bill was clearly subject to demurrer for self-contradiction and uncertainty.

**4. Partnership ⬥348—A bill to surcharge and set aside accounting held not to excuse delay in filing the same.**

A bill to surcharge and set aside an actual accounting for fraud and suppression ought to set out the statement of the account, and, if ignorance of fraud or error in the settlement is alleged as excuse for delay in filing the same, it should further show some fact reasonably superinducing such ignorance and should distinctly aver the time when the fraud or mistake was discovered, and these requirements are not met by alleging merely "that it is through the examination of these books which the respondent brought to B. that complainant discovered the frauds which had been perpetrated on him," such allegation being wholly inconsistent with a preceding allegation that respondent refused to allow complainant to inspect the partnership records and accounts, and the theory of complainant's excusable ignorance of his rights not being consistent with an allegation that, since the alleged ascertainment of a balance specified he "has repeatedly applied to respondent to come to a final settlement of the partnership accounts," and the latter allegation being also inconsistent with the theory advanced by complainant of a continuing trust recognized by respondent as to which laches could not begin to run.

**5. Equity ⬥78—Voluntary absence from state held not to excuse delay in bringing suit.**

A complainant's voluntary absence from the state is not of itself sufficient to excuse delay in bringing suit.

**6. Partnership ⬥348—What bill to surcharge an account stated should allege stated.**

A bill to reopen and surcharge an account stated should allege an accounting unequivocally, set out its terms, the circumstances under which it was made, show specifically wherein it was erroneous or fraudulent, and acquit complainant, by appropriate allegations, of all negligence in discovering such errors and frauds, and, thereby of laches in seeking equitable relief.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by M. Brody against Joseph Maril. From a decree sustaining demurrers to the bill, complainant appeals. Affirmed.

On January 16, 1919, the appellant, Brody, filed against the respondent, Joseph Maril, a bill of complaint praying for an accounting of partnership dealings and transactions, and that the respondent be directed to pay the orator the amount found to be due. The pertinent part of the original bill is set out in paragraph 1, other than the facts that the complainant "is a resident citizen of Birmingham, Jefferson county, at the present time, but was a nonresident during the period of about 11 years previous to the taking of his present residence, and that the respondent, Joseph Maril, is a resident of Savannah, Ga., and has been a resident of Savannah, Ga., during a period of about 10 years.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Paragraph 1 of the bill is as follows:

"That on or about the year 1900 orator and respondent entered into a copartnership together in the lending of money upon pledges in the city of Birmingham, Ala., conducting the same under the name of the Electric City Loan & Pledge Company, and continued to operate the same until about the year 1907, when orator went to California to conduct another business for the joint account of orator and respondent, orator engaging to bring to the business conducted in the city of Birmingham, Ala., his entire time and energies and experience, and he and orator were equally interested in the profits, which were considerable up to the time orator went to California, as aforesaid, and what profits stood to the credit of orator he left in the business at the time of his departure, and respondent continued to conduct the said business for the joint account of both, and that, otherwise than as stated, there was no formal dissolution of the said Birmingham firm, although orator does not claim to have the right to participate in the profits after the date on which on accounting between orator and respondent there was ascertained to be distributable between them some $16,000, and that on account of his share therein orator received from respondent sundry sums of money which would leave a balance due orator of about $6,000; that the business so conducted by the firm was conducted at the same place in the city of Birmingham, Ala., on Twentieth street, between First and Second avenues, at which the respondent now conducts the business of the Electric City Loan & Pledge Company, the only change in name being the addition of the words '& Pledge,' but orator does not claim to be a partner in the present business which succeeded to the business of the firm referred to as having existed between orator and respondent. Orator shows that there has never been a formal settlement between him and respondent, nor any formal dissolution of the partnership, and that since the time above mentioned at which it was ascertained that there was distributable the sum of about $16,000 between them orator has repeatedly applied to respondent to come to a final settlement of the partnership accounts."

On the 7th of April, 1921, complainant filed an amendment as follows:

"Comes the plaintiff, and by leave of court first prayed and obtained amends his bill by adding to the same and at the end of the averments thereof and just before the prayer the following: And plaintiff prays that the said respondent claims that he heretofore tendered to the complainant a complete account of the said partnership, and that he has settled accordingly, but complainant avers the fact to be that the said alleged statement rendered to complainant was a false and fraudulent one, and an attempt on the part of the respondent under guise and pretense of an accounting to defraud complainant not only the accounting to which complainant is entitled as hereinafter prayed, but that in the said pretended accounting the respondent did not give to the complainant any credit for his one-half interest in the furniture and fixtures used and accumulated in the course of business during the continuance of the said partnership; that he entered upon as of the sales of one of the years of the business a large sale made on credit to one Schoen, and then entered as of the sales of the following year the collections made from the said Schoen, the operation and effect of which was to cause the inventory to be in error the amount or thereabout of said duplicate entry, and then for the succeeding year asserts the error in the inventory and takes credit for the same, a loss resulting to complainant of about $1,100, whereas there was no such loss; and that, in order to sustain his alleged settlement with complainant, the respondent has manufactured for his own purpose the pretended existence of duebills alleged by him to have been found in the establishment in which the firm did business, the said alleged duebills, which never had any existence, aggregating, as he claims, about $1,775; he has pretended to the shipments to the complainant of large amounts of goods and merchandise as of a year which is fraudulently laid, to the end that his alleged settlement may appear, and in other ways now pretends and contends for items of accounting which never appeared in any statement sent to the complainant, and all of which are fraudulently and falsely manufactured by the respondent for the purpose of defeating this complainant of the accounting to which he is entitled as hereinafter prayed, and has never allowed complainant any credit for the profits of the business which were invested and reinvested and kept actively engaged in building up the assets of the firm, but has fraudulently suppressed complainant's interest therein, and has appropriated the same to his own credit to the exclusion of complainant's interest therein and to his own advantage in a large sum, to wit, $30,000, one-half of which on an accounting belongs to complainant."

Upon demurrer to the bill as last amended being sustained, the appellant on August 13, 1921, filed an additional amendment as follows:

"That it is a mathematical impossibility to point out the items in error in the pretended account rendered to the complainant by the respondent, for the palpable reason, which complainant states are facts and true, that it is in the suppression of the facts and figures that the complainant perpetrated the fraud on complainant, the said alleged account merely stating that the goods on hand at the time amounted to a certain sum; but the sum so stated was false and fraudulent, having been arrived at through an omission entirely of the furniture and fixtures which had been accumulated during the conduct of the business under the personal supervision of complainant while in Birmingham, Ala., and having arrived at the gross figures stated upon an alleged error in a previous inventory, the alleged statement so rendered not showing these facts at all, and the sum arrived at as the profits of the said firm were correctly deduced from the figures given in said alleged statement, but all of the said figures were false and fraudulent, each and every one of them, but unknown to complainant.

"That previous to the filing of the bill in this cause respondent insisted that complainant should file the bill in this cause, respondent

expressing anxiety that complainant should do so, and complainant avers that he ought to be held to be estopped from setting up laches in the premises, considering that all of the books of the said firm in which the daily transactions were recorded are in existence and within the jurisdiction of the court, and that it is through the examination of these books which the respondent brought to Birmingham that complainant discovered the frauds which have been perpetrated on him. That the relations between complainant and respondent were fraternal in the strictest sense of that term, and that respondent took advantage of that known relation, knowing full well the confidence the complainant reposed in him to defraud him through the manipulation of the figures relating to the affairs of said firm.

"And complainant amends the prayer of his bill as follows: And, if complainant is mistaken in the relief heretofore prayed, he now prays that the said alleged accounting may be set aside and held for naught, and a reaccounting be ordered by the court, and the cause be referred to the register for such accounting, upon the setting aside of the pretended accounting upon which respondent now insists, and as in duty bound, complainant will ever pray."

On the 22d day of September, 1921, a decree was entered sustaining the demurrers to the bill as last amended. The appeal is on the record.

A., Latady, of Birmingham, for appellant.

An action for an accounting may be brought immediately on dissolution, but there has never been a formal dissolution of the firm. 108 Ala. 105, 20 South. 387. The departure of appellant for California, leaving all the assets of the firm in the custody and under the management of appellee, created a continuing trust, and the accrual of the right to bring the action did not come about until appellee repudiated that trust in 1918. 62 Ala. 358. The suit is based on fraud, imposition, and breach of confidence, and time ought not to be given to run until discovery of the fraud. 161 Wis. 146, 152 N. W. 820; Code 1907, § 4852. Merely being out of the state did not impute laches to appellant. 79 Misc. Rep. 523, 140 N. Y. Supp. 220.

Beddow & Oberdorfer, of Birmingham, for appellee.

A suit for settlement of a dissolved partnership is barred, unless commenced within six years after the last item of debit or credit. 3 South. 439; 108 Ala. 105, 20 South. 387; 1 Story, Eq. Jur. § 529; 91 Fed. 332, 33 C. C. A. 547. When two persons account with each other, and one pays the balance found against him, the presumption is that the settlement includes all items then existing between them and overdue. 70 Ala. 303. Where a party seeks to open an account for fraud, he must specifically allege the fraud; and when he seeks to surcharge or falsify the account,

he must specifically allege the grounds therefor. 1 C. J. 716; 81 Ala. 464, 1 South. 188; 54 Ala. 646; 36 Ala. 720; 27 Ala. 317; 6 Ala. 518, 41 Am. Dec. 60; 79 Ala. 381; 204 Ala. 148, 85 South. 395. When a party, with full knowledge, freely does what amounts to a recognition of the transaction as existing, and allows the other party to deal with the subject-matter under the belief that the transaction has been recognized, although originally impeachable, the transaction becomes unimpeachable in equity. 81 Ala. 464, 1 South. 188; 185 Ala. 53, 64 South. 572; 143 Ala. 237, 38 South. 916, 5 Ann. Cas. 55; 155 U. S. 448, 15 Sup. Ct. 162, 39 L. Ed. 218; 171 Ala. 188, 54 South. 684, Ann. Cas. 1913A, 977.

SOMERVILLE, J. Construing the allegations of the bill more strictly against the pleader, it must be intended that there was some sort of effective dissolution of the partnership, and an accounting thereof, in the early part of the year 1907, about 12 years prior to the filing of the bill.

[1] As a bill for an accounting and settlement of partnership affairs, more than six years having elapsed since the last partnership transaction, this suit is effectually barred. Stovall v. Clay, 108 Ala. 105, 20 South. 387, and cases cited therein.

[2] But the original bill shows that, though there was no formal dissolution nor settlement, there was nevertheless a discontinuance of the partnership business, and that it was then "ascertained that there was distributive the sum of $16,000 between them," and that, "on account of his share therein, orator received from respondent sundry sums of money which would leave a balance due orator of about $6,000." If these allegations are true, complainant has a clear legal remedy for the recovery of this ascertained balance, and there is no equity in the bill.

[3] Without withdrawing or modifying those allegations, the bill was amended by adding allegations that respondent "claims" to have tendered to complainant a complete account of the said partnership, and to have settled accordingly, but that said alleged statement was a false and fraudulent one in certain particulars named; the conclusion being that, by reason of various fraudulent concoctions and omissions, the true amount of partnership assets is $30,000, half of which belongs to complainant.

As the amended bill stood, it was clearly subject to those grounds of demurrer which pointed out its self-contradictions and uncertainties.

[4] But if, waiving those defects, the amended bill should be viewed as a bill to surcharge and set aside an actual accounting for fraud and suppression, it ought to set out the statement of account thus sought to be falsified; and, if ignorance of fraud and error in the settlement is alleged as an

excuse for the delay in filing the bill of complaint, the bill should go further and "show some fact which could reasonably have superinduced his ignorance—what it was aroused his suspicious and quickened his diligence in examining and inquiring into the correctness of the accounts and settlement. An allegation of ignorance of material facts and of subsequent discovery, not thus specific and proved, cannot * * * relieve from the imputation of laches, when laches is material." Paulling v. Creagh's Adm'rs, 54 Ala. 646, 654; James v. James, 55 Ala. 525. And such a bill "should contain distinct averments as to the time when the fraud or mistake was discovered, so that the court may see whether, by the exercise of ordinary diligence, the discovery might not have been made before." 1 Corp. Jur. 717, § 361; James v. James, supra. These requirements are not met by the allegation merely "that it is through the examination of these books which the respondent brought to Birmingham that complainant discovered the frauds which had been perpetrated on him." That allegation is, indeed, wholly inconsistent with the preceding allegation that respondent had refused to allow complainant to inspect the partnership records and accounts. Nor is the theory of complainant's excusable ignorance of his rights consistent with the allegation of the bill that, since the alleged ascertainment of the balance of $16,000, he "has repeatedly applied to respondent to come to a final settlement of the partnership accounts." That allegation is inconsistent also with the theory, advanced by complainant, of a continuing trust recognized by respondent, as to which laches could not begin to run. Ala. C. & C. Co. v. Gulf C. & Coke Co., 171 Ala. 544, 54 South. 685; 21 Corp. Jur. 247, § 244.

[5] It is to be observed also that a complainant's voluntary absence from the state during the period of apparent laches is not of itself sufficient to excuse the delay. 21 Corp. Jur. 240, § 233. See, also, Sayre v. Elyton Land Co., 73 Ala. 85, 103; Holt v. Wilson, 75 Ala. 58, 67.

Notwithstanding the amendment to the bill, it is very doubtful if its allegations, as a whole, make of it a bill to reopen and surcharge an account started. Harrison v. Farrington, 36 N. J. Eq. 107.

[6] If complainant wishes to proceed upon that theory, he should abandon the original aspect of his bill; allege an accounting unequivocally; set out its terms and the circumstances under which it was made; show specifically wherein it was erroneous or fraudulent; and acquit himself, by appropriate allegations, of all negligence in discovering such errors and frauds, and thereby of laches in seeking equitable relief.

The defects above noted were pointed out

by appropriate grounds of demurrer, and the demurrers were properly sustained to both the original and the amended bills.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.