VANN et al. v. CALCASIEU TRUST & SAVINGS BANK. (No. 7402.)

(Court of Civil Appeals of Texas. Galveston. Feb. 8, 1918. Rehearing Denied June 13, 1918.)

1. EXECUTORS AND ADMINISTRATORS ⬤⟿380(4) —FOREIGN ADMINISTRATOR—SALE OF PROPERTY—QUESTION FOR JURY. .
    Evidence *held* to present question for jury whether Louisiana creditor as ancillary administrator in that state was guilty of fraud in

purchasing land at sale to pay its claim and immediately selling it at a profit.

2. EXECUTORS AND ADMINISTRATORS ⚖══380(1) —SALE OF PROPERTY—PURCHASE BY ADMINISTRATOR.

The Louisiana statute which expressly permits an administrator who is mortgagee of land belonging to the estate to purchase at his own sale merely relieves administrator from presumption of fraud, but does not prevent court of equity from determining whether there was fraud.

3. EXECUTORS AND ADMINISTRATORS ⚖══365— SALE OF PROPERTY—FRAUD.

Under Civ. Code La. arts. 2607, 2608, and Code Prac. arts. 689, 690, though an administrator's sale is effective from moment of adjudication, where administrator who was also mortgagee of property procured a sale, but before the property was deeded discovered that it could sell at an advance, the administrator should have applied for resale.

4. JUDGMENT ⚖══713(2) — CONCLUSIVENESS — RES JUDICATA.

Doctrine of res judicata is rule of convenience which will not be enforced when failure to have question determined was not due to any negligence or fault of the party against whom rule is invoked, and against whom enforcement will produce injustice, unless the issue was clearly within the pleading in first suit.

5. EXECUTORS AND ADMINISTRATORS ⚖══513 (12)—ORDER ON ACCOUNTING—RES JUDICATA —MATTERS INCLUDED.

A judgment in Louisiana confirming report of administrator's sale and accounts of administrator did not determine issue of alleged fraud of the administrator in purchasing property and selling at a profit, and such judgment was not res judicata of such question.

6. JUDGMENT ⚖══825 — CHARACTER OF PROCEEDING—RES JUDICATA—"IN REM."

The administration of an estate is a proceeding "in rem" and is binding upon all parties when notice of the proceedings is given as required by law of state in which proceedings are had, but is binding only as to matters and things brought before the court and essentially within its jurisdiction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, In Rem.]

7. JUDGMENT ⚖══823—JUDGMENT OF FOREIGN STATE—COMITY—ATTACK FOR FRAUD.

A judgment at law procured in one state by the fraudulent conduct of the plaintiff, and which had the effect of depriving the defendant of a meritorious defense that he was not negligent in failing to urge, may be enjoined by a court of equity in another state which has acquired jurisdiction of the person of the plaintiff.

8. JUDGMENT ⚖══820—JUDGMENT OF FOREIGN STATE—ATTACK FOR FRAUD.

Where Louisiana administrator, who was also mortgagee of the property, purchased property at his own sale and immediately resold it at a profit, if the approval of final account as administrator was an adjudication of its right to the profits, the judgment could be attacked in Texas for fraud.

9. EXECUTORS AND ADMINISTRATORS ⚖══526— ANCILLARY ADMINISTRATOR—ACCOUNTING— RES JUDICATA.

A Louisiana judgment confirming account of administrator who made profit from the estate was not res judicata against the Texas domiciliary administrators who could not have instituted any suit or made any defense in the courts of Louisiana, ability to make such defense being a fundamental requisite of due process of law without which no judgment is conclusive.

Appeal from District Court, Harris County; Henry J. Dannebaum, Judge.

Suit by the Calcasieu Trust & Savings Bank against Andral Vann and another as administrators of the estate of Francis A. Ogden, deceased. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

J. H. Crooker, Cooper & Merrill, and Andrews, Streetman, Burns & Logue, all of Houston, for appellants. Baker, Botts, Parker & Garwood, of Houston, McCoy & Moss, of Lake Charles, La., and Jesse Andrews and C. L. Carter, both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellants, Andral Vann and N. B. Knight, administrators of the estate of Francis A. Ogden, deceased, to recover a balance of $72,537.08, with interest from June 11, 1915, at the rate of 8 per cent. per annum, and an additional 10 per cent. as attorney's fees, alleged to be due upon a note for $74,000 executed by said Ogden in favor of plaintiff on February 14, 1914, and payable four months after date.

The petition, which was in usual form of petition in suit upon a note, alleged that the claim had been presented to defendant administrators on June 11, 1915, and they had refused to allow same as a claim against the estate of said Ogden.

The following summary of the other pleadings in the case, which we copy from appellants' brief, is sufficient for an understanding of the questions discussed and decided in this opinion:

Having theretofore filed an original and a first amended original answer, defendants, on March 23, 1916, filed their second amended original answer, upon which, together with certain supplements and amendments, the case was tried. The second amended original answer of defendants admitted that plaintiff was entitled to recover except in so far as it might be defeated in whole or in part by the facts of said answer constituting a good defense thereto.

As a defense against said claim, defendants showed in their answer that said Francis A. Ogden was, at the time of his death, a resident of and domiciled in Harris county, Tex.; that he died June 6, 1914; that on June 8, 1914, the defendants were appointed temporary administrators of his estate by the county court of Harris county, Tex., continued as such until July 8, 1914, when they were appointed permanent administrators of said estate, and had continued as such permanent administrators from that time. They further showed: That prior to the death of said Francis A. Ogden he had purchased 48,000 acres of land situated in Calcasieu parish, in the state of Louisiana, at a purchase price of $480,000. At the time of his death he was owing a balance of the purchase price

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of said land amounting to $241,000, secured by liens upon said property. That at the time of the death of said Francis A. Ogden the plaintiff claimed to be a creditor of his estate by virtue of the indebtedness sued on in this case, and as such creditor, on the 9th day of June, 1914, was appointed and thereafter qualified as administrator of the estate of said Francis A. Ogden in the state of Louisiana. That said administration was merely an ancillary administration of the estate of said Ogden situated in the state of Louisiana, whereas the administration of the defendants was the domiciliary administration of said estate.

The answer further alleged: That on December 12, 1914, the plaintiff, as administrator of the estate of said Ogden in the state of Louisiana, made a pretended sale of substantially all of said 48,000 acres of land at a price of $5 per acre. That it became the purchaser of said land at its own sale. That it used the proceeds of said sale in paying the prior liens upon said property, leaving its indebtedness, except a small credit thereon, unsatisfied. That within a few days afted it had secured said conveyance to itself for said properties it sold and conveyed 7,240 acres of said land to the North American Land & Timber Company, at a price of $7 per care, and thereby realized for itself a profit upon said resale of said land of $14,480, over and above the price paid by it to itself as administrator for said lands. That the plaintiff, at and before the said conveyance of said land to itself by itself as administrator, knew that said sale of said portion of said land could be made to the North American Land & Timber Company, Limited, at said price of $7 per acre. That there was a prior understanding and agreement by and between the said North American Land & Timber Company, Limited, and plaintiff, to the purpose and effect that plaintiff should purchase said land at said pretended administrator's sale thereof, and that the same should be thereupon shortly thereafter sold to said North American Land & Timber Company, Limited, at and for said profit of $14,480, and that the plaintiff (the said North American Land & Timber Company declining to bid at said sale) should be interposed as the nominal purchaser of said property at the price of $5 per acre, with the end and purpose in view that the plaintiff should, as it afterwards did, acquire for iteslf the profit to be realized upon the pretended resale of said land. That if in fact there was no prior agreement, that said plaintiff, by the use of such diligence as it was required to have used, could have ascertained the fact that said land could be sold to said North American Land & Timber Company at said price of $7 per acre, and that it was the duty of plaintiff as such administrator to have used such diligence and made said sale and secured said advanced

price for the benefit of said estate. That said pretended resale of said property was made prior to the execution by plaintiff to itself of the conveyance of said land, and while the sale to plaintiff was executory and in fieri and subject to plaintiff's control, and the legal title to said property in fact remained in the estate of the said Francis A. Ogden and of plaintiff as the administrator of said estate.

Defendants made substantially the same character of allegations with reference to the sale of the remaining 40,000 acres of the land to a corporation known as the Prairie Farms Company, at a price of $7 per acre. They alleged that by reason of said transactions the plaintiff had realized for itself a profit of $96,000 upon the resale of said properties made in the manner alleged, and that the plaintiff in equity and in law held said profits in trust for the benefit of said estate, of which defendants were the domiciliary administrators. There were other allegations with reference to the transactions by which the plaintiff was enabled to make said profit, and with reference to the conduct of negotiations between plaintiff and other parties interested therein, all to the effect that plaintiff had fraudulently used its office of administrator to acquire said profit of $96,000, and, said sum being more than the amount of indebtedness sued upon herein, that the same was entitled to be taken in offset and extinguishment of the demand of plaintiff sued in this case. In the same answer, the defendants pleaded said facts as a counterclaim and in reconvention against plaintiff, and sought judgment over against the plaintiff. They alleged that said facts amounted to a conversion of said lands by plaintiff and rendered the plaintiff liable to the defendants as the domiciliary administrators of said estate for the reasonable market value of said land, which was alleged to amount to the sum of $720,000. On said cross-action they prayed for judgment for said sum of $720,000, and in the alternative that they recover the profits actually realized by plaintiff as a result of said transaction.

An intervention was filed on the part of certain persons claiming to be heirs at law of said Francis A. Ogden. This intervention, however, was subsequently during the course of the trial dismissed.

On June 7, 1916, plaintiff filed its first amended first supplemental petition. This supplemental petition consisted, first, of certain exceptions to the answer of the defendants, among which was the exception to that portion of the answer which sought judgment in reconvention for the reasonable market value of the lands sold by plaintiff to itself as administrator. This exception was sustained by the court, and this part of the controversy accordingly eliminated. The remainder of this first supplemental answer

consisted of special denials of the material allegations of defendants' answer, and in allegations with reference to the history of the various transactions on the part of the plaintiff with said Francis A. Ogden in his lifetime, and with the representatives of his estate after his death. It also contained a plea to the effect that the proceedings had in the district court of the state of Louisiana in the administration, including the approval by said court of certain provisional accounts of plaintiff as administrator, and of its final account as said administrator, constituted res adjudicata as against the defenses set up in this case by the defendants.

A first supplemental answer was filed by the defendants on June 7, 1916, the principal purpose of which was to specifically plead certain provisions of the laws of the state of Louisiana, and to reiterate and claim the benefit of the facts pleaded in the second amended original answer theretofore filed by the defendants.

On June 26, 1916, the defendants were permitted to file, and did file, a trial amendment, directed against the plea of res adjudicata, theretofore filed by the plaintiff. This trial amendment alleged: (a) That the matters in issue in this cause upon which the offset and counterclaim of the defendants was based were not in the Louisiana court and were not therein heard or adjudicated. (b) That said judgment constituted no bar to the right of the defendants to hold the plaintiff as a trustee for the profits derived by it from the estate of Francis A. Ogden in the manner fully set out in their former pleadings. (c) It alleged that if said judgment, or any of them, constituted any bar to the defenses set up by the defendants, the defendants in this cause were entitled to have the same vacated as far as necessary, and alleged that the same were procured by fraud against the defendants and upon the court in which said judgments were obtained. (d) Because the cause of action asserted by the defendants in this cause against the plaintiff at the time of said judgments was a personal cause of action against the plaintiff, and said Louisiana courts had personal jurisdiction over the defendants in said cause, and to give said judgments the effect of canceling and cutting off the cause of action against the plaintiff would be to permit said state of Louisiana by its said court to deprive these defendants of their property without due process of law, contrary to the fourteenth amendment of the Constitution of the United States.

With the pleadings in the condition above outlined, the case was tried before a jury, beginning June 7, 1916, and at the conclusion of the testimony in the case on June 26, 1916, under peremptory instruction based solely upon the pleas of res adjudicata upon the part of the plaintiff, the court instructed a verdict in favor of the plaintiff for the sum of $86,439.99, and against the defendants on their cross-action and other causes of action against plaintiff alleged in their pleadings, and judgment was rendered accordingly.

We shall not set out the evidence in detail, nor discuss it at length. The following facts were shown by the undisputed evidence:

Francis A. Ogden, who was a resident of Harris county, Tex., at and for a number of years prior to the time of his death, died in said county on June 6, 1914, leaving a large estate, the greater portion of which was situated in this state. On June 8, 1914, appellants were appointed temporary administrators of the estate of said Ogden in Texas and continued as such until July 8, 1914, when they were appointed and qualified as permanent administrators. In December, 1910, Francis A. Ogden purchased two tracts of land, one from the North American Land & Timber Company, containing 11,559.59 acres, and one from the Orange Land Company, containing 36,445.98 acres; said lands being situated principally in Calcasieu parish, in the state of Louisiana. The purchase price of these lands was $10 per acre, of which one-fifth was paid in cash and the balance in four equal annual installments; the entire purchase price aggregating approximately $480,000. At the time of his death, Ogden had paid two of the notes to each of these companies, and owed a balance of two notes to the Orange Land Company amounting to $146,400, and two notes to the North American Land & Timber Company amounting to $46,238, making a total of $192,638 balance due upon the purchase price of the lands, and this together with a note of $75,000 to plaintiff, being the debt sued upon in this case, was the total indebtedness against the estate in the state of Louisiana.

On June 9, 1914, the three creditors in Louisiana above named joined in an application to have the plaintiff in this case appointed administrator of the Louisiana estate. Under this application appraisers were appointed by the court, and they, on June 12, 1914, filed the appraisement of the real estate in Calcasieu parish showing 47,567.58 acres of land valued at $15 per acre, aggregating $713,513.70, and on June 18, 1914, appraisement was filed showing 640 acres in Cameron parish, valued at $10 per acre, aggregating $6,400.

Appellee was appointed administrator of the estate in Louisiana July 23, 1914, without bond. On August 21, 1914, appellee made an application to sell all of the lands of the estate in order to pay the indebtedness above mentioned. An order was made on this application on September 2, 1914, directing a sale of said property at public sale, after advertisement, for two-thirds of its appraised value; and upon a failure of the property to bring that amount that it be readvertised to be sold upon a 12 months' credit. The property appears to have been offered for sale under this first order on November 21, 1914, and no bid was made, and the appellee there-

upon procured a second order of sale on November 25, 1914, directing a sale to be made after advertisement for what the property would bring upon a 12 months' credit.

On December 12, 1914, plaintiff as administrator undertook to execute said second order of sale by offering said property for sale thereunder, and at said sale was itself the highest bidder for the sum of $241,000 for all of the property except 202 acres, which appear to have been sold on February 20, 1915, to James W. Gardner and Charles O. Noble. No written report of said sale was made to the court, and no written conveyance or other writing of any kind executed evidencing said sale until December 17, 1914, at which time plaintiff, by H. W. Lanz, its trust officer, and Frank Roberts, its president, executed a conveyance from itself as administrator to itself as a private corporation, purporting to convey said lands with the exception of the small tract above mentioned. Application to sell the remaining small portion was filed on December 15, 1914, and an order made the same day, and the sale of said land as above stated to James W. Gardner and Charles O. Noble was made February 20, 1915, for $1,050.

Appellee continued to act as administrator of the estate in Louisiana until June 11, 1915. On January 2, 1915, appellee filed a provisional account as administrator, showing the total amount received by it from the sales of lands and other sources of $241,325. It deducted from this on account of taxes, court costs, etc., $17,594.41, on account of amounts due American Land & Timber Company and Orange Land Company $213,840, making a total of $231,465.33, and retained a balance of $9,859.67, which was to be used in paying the fee when adjusted of the attorney for absent heirs, and the balance to be applied as a credit on the indebtedness of appellee. A second provisional account showed the collection of other small amounts and the disbursement of certain amounts, and the final account shows that after application of all of the funds reported as having been received by it and the payment of all the indebtedness and all charges against the estate in the state of Louisiana, except the claim of appellee, there remained due to appellee on its note the sum of $72,537.08.

Frank Roberts, president of appellee bank, testified:

"The bank paid for this land it bought the sum of $241,000. I have a sheet showing just what we got for that land. We sold the greater part of the land at $7, but not all of it. This deed here recites a consideration of $7 per acre, but there was two or three tracts sold at a different figure, one, two, or three tracts sold at a different figure. This sheet discloses it all. All of the land we sold to the North American Land & Timber Company we sold at $7 per acre. We got $50,078.95 for the land we sold to the North American Land & Timber Company, amounting to 7,239.85 acres. We got $278,582.15 for the land we sold to the Prairie Farms Land Company, which was 39,797.45 acres, amounting to $7 per acre. In addition to those two sales, we sold 645 acres to J. W. Gardner at $2, or $1,290. We sold to B. M. Talbot and F. T. Woodring 60 acres at $7, and 101.63 acres at $10, less $3 of $7; B. M. Talbot, 161.63 acres for $1,131.41, or $7 an acre; and F. T. Woodring, 161.63 acres at $7, or $1,131.41. There were no other sales. The last four named sales I think, were made about the 6th or 7th of February, 1915. The aggregate amount of all of those sales was $332,813.92. The difference between that amount and the amount we paid for the land is $91,805.42, which represents the profit that the bank made on the resale of the land."

There was other evidence than that establishing the undisputed facts above stated which tended to show that, before the sale by the administrator bank to itself was fully consummated by the payment of the purchase price and the execution of the deed by the administrator, said administrator bank had an agreement or understanding with the parties to whom it sold the property that they would purchase same from the bank after it acquired title through the administrator's sale at a price of $91,800 in excess of the amount paid by the bank to the estate for said property, and there was further evidence tending to show that this agreement or understanding existed prior to the administrator's sale on December 12, 1914.

[1] Upon this state of the evidence, unless the ruling of the trial court sustaining appellee's plea of res adjudicata was correct, the issues of fraud raised by the pleading should have been submitted to the jury.

It is a principle universally recognized and enforced in courts of equity that a trustee may not take advantage of his position and powers to reap profit for himself at the expense of the trust estate, but must so execute his trust as to secure the highest advantage for the beneficiaries of the estate, and if, in disregard of this duty, a trustee profits from the management of the trust estate, he must account therefor to the beneficiaries. The principle has been applied generally in cases in which a trustee or administrator has sold trust property to a third party who in fact bought for the use and benefit of the trustee, and in all cases of this kind the trustee has been held responsible to the trust estate for any profits realized by him from the transaction, and the law is so jealous in this regard of the rights of the beneficiaries that in most jurisdictions a trustee cannot acquire any title to property purchased at his own sale. There can be no difference in the application of the principle in the character of cases cited and in the instant case. In the language of the New Jersey court in the case of Creveling v. Fritts, 34 N. J. Eq. 134:

"Adequate protection can only be given to the cestui que trust by elevating the trustee to a region where temptation never comes, and if he descends, to take from him whatever of the trust property (or profits) may be found in his grasp which he cannot show, by satisfactory proof, that he obtained without any violation of the great principles which should govern his conduct."

In the case of Haswell v. Blake, 90 S. W. 1125, 1127, Blake was trustee in a deed of trust. He had made an agreement to sell property covered by the deed of trust to Hackelman for $1,000. He advertised it at public sale, and had his attorney, Beaty, buy the property in for $500, and Beaty then sold the property to Hackelman for $1,000. The court says:

"This evidence, we think, makes it clear that the act of Blake in going through the form of selling the property at public sale and having it bid in by his attorney, and by such attorney conveyed to Hackelman, was a device, and the means adopted by the trustee of carrying out his agreement to sell the property to Hackelman. By this arrangement, the trustee received $1,000 for the property, and this is the amount which, under the law, he should account to plaintiff in error for, and not the $500, the amount of the bid by his attorney."

In the case of Johnson v. Kay, 8 Humph. 142, the Supreme Court of Tennessee, in discussing a sale of property by an administrator, says:

"It is a well-established principle of equity that an executor or administrator will not be permitted under any circumstances to derive a personal benefit from the manner in which he transacts the business or manages the assets of the estate. Any profit thus derived is considered so much increase of the trust fund in his hands, and as belonging to the estate. A transaction of the character in question will not receive the sanction of a court of equity, unless, upon a scrupulous examination of all the circumstances, it shall be found free from the imputation of fraud, or of being a mere scheme and artifice to secure a personal benefit to the administrator, under pretext of a sale of the assets to a third person."

Among the many cases illustrating and enforcing the principle above stated, we cite the following: Cook v. Collingridge, 19 Eng. Rul. Cases, 534; Williams v. Scott, Law Reports Appealed Cases (1900) 499; Voltz v. Voltz, 75 Ala. 555; James v. James, 55 Ala. 525; Trust Co. v. Menage, 73 Minn. 441, 76 N. W. 195.

[2] The Code of Louisiana expressly provides that an administrator who is a mortgagee of property of the estate may purchase such property at his own sale; but this statutory provision, the manifest purposes of which is to protect an administrator from the sacrifice of property of the estate upon which he holds a mortgage and the resulting depreciation of the value of his claim against the estate, only relieves the administrator from the presumption of fraud arising from a purchase by him of property of the estate and cannot be construed as preventing a court of equity from investigating and determining from the evidence in a particular case the question of whether in the sale of property of the estate to himself or to others the administrator has reaped a profit for himself at the expense of the estate which in fairness and good conscience he should not be allowed to retain.

It is contended by appellee that in no event can the administrator be held liable for profits from the resale of the property unless the agreement or understanding with the vendees of the administrator to buy the property at the advanced price above the amount paid by the administrator to the estate existed prior to the time the administrator made its bid at the sale on December 12, 1914, and the property was declared sold by the auctioneer.

[3] In support of this contention, the following articles of the Civil Code of Louisiana, which are applicable alike to execution and administrator's sales, are cited:

Civil Code of Louisiana, art. 2607. "*Highest Bidder Obtains Title.*—When the highest price offered has been cried long enough to make it probable that no higher will be offered, he who * * * made the offer, is publicly declared to be the purchaser, and the thing sold is adjudicated to him."

Civil Code of Louisiana, art. 2608. "*Adjudication Passes Title.*—This adjudication is the completion of the sale; the purchaser becomes the owner of the article adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract. * * *"

Code of Practice, art. 689. "*When Adjudicatee Refuses to Accept.*—If the person to whom the property has been adjudged shall refuse to pay to the sheriff the price of the adjudication, or to offer the proper sureties when the sale has been made on credit, the sheriff shall expose to sale anew the thing seized, and adjudge it to another person."

Code of Practice, art. 690. "*Effect of Adjudication.*—The adjudication thus made has, of itself alone, the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudicated."

Many cases are cited, decided by the higher courts of Louisiana, in which it is held that under these articles of the Code the title passes at once when the auctioneer adjudicates to the highest bidder the property offered for sale. These decisions appear to us to be perfectly sound, but we cannot think they have any controlling or material application to the question of whether it was appellee's duty, if before it received a deed and paid the purchase money it discovered that the property could be sold to other parties at an advance of $91,800 over the amount appellee bid, to report that fact to the court and ask for an order for a resale of the property. If under the facts stated appellee had taken this course, no creditor or other person interested in the estate could have rightfully complained, and if there had been any opposition thereto we cannot believe that any court of equity would have done otherwise than order a resale. Appellee ought not to be heard to say:

"I bid for this property and the auctioneer adjudged it to me, and from that moment it became mine, and although in a short time thereafter, and before I had paid a cent of the purchase money or any deed had been executed, I found that I could sell it for a profit of $91,800, I would not relinquish that profit to the estate of which I was trustee, but reaped it for myself at the expense of my cestui que trust."

We cannot give our sanction to a claim so entirely at variance with the general principle that an administrator will not be permitted under any circumstances to derive a profit from the manner in which he transacts the business of the estate.

This brings us to a consideration of the ground upon which the trial court took the case from the jury by instructing a verdict in favor of appellee.

The question of res adjudicata presented by plaintiff's plea in answer to defendants' counterclaim is not free from difficulty; but, after due consideration and consulting many of the authorities upon the subject, we have reached the conclusion that the plea should not have been sustained.

The proceedings and orders made in the probate court of Louisiana, upon which the plea of res adjudicata is based, are as follows:

As before stated, the sale of the property by the administrator bank to itself was made on December 12, 1914, under an order of the probate court and after notice as required by the laws of said state. On January 2d the administrator filed its first provisional account and a petition praying for its allowance. This petition recites that for the purpose of paying the debts of the succession all of the real estate belonging to the estate was offered for sale, except a tract of 202 acres, which would be offered for sale on January 15, 1915, and that from the property the sum of $241,000 had been realized, and had collected a further sum of $325 due the estate for rent of the land under a contract made with deceased Ogden. Accompanying the petition there was an itemized statement of the money that had come into the hands of the administrator and of the debts due by the estate. This amount shows that all of the debts of the estate, except the $74,000 due the administrator bank and the amount of the fee which the court might fix as compensation for the attorney appointed by the court to represent absent heirs, amounted to the sum of $231,465.33, and that after paying said debts there would be a balance in the hands of the administrator amounting to the sum of $9,859.67 to be applied to the payment of the attorney's fee to be fixed by the court, and the remainder to be credited on the debt due the administrator.

The court on January 2, 1915, made an order directing that the petition and annexed schedule be filed, and that all parties desiring to oppose the same be required to file their written opposition thereto within ten days from date. J. Sheldon Toomer, attorney for absent heirs, acknowledged receipt of copy of the petition. Notice, such as is required by law, was issued by the clerk of the court, and was published in the local newspaper for ten days, beginning January 2, 1915.

On January 28, 1915, the court rendered judgment, in which, after finding that the filing of the account had been duly published as required by law and due service made upon the attorney for absent heirs, decreed that the account, after being amended so as to allow J. Sheldon Toomer attorney's fees in the amount of $2,500, be homologated, approved, and made the judgment of the court,

and that the items carried upon the account as "law charges, expenses of administration and vendor's lien," aggregating $231,465.33, be paid from the proceeds in the custody of the administrator. The court further ordered that, of the sum of $9,859.67 which would be left on hand, the administrator should reserve $3,000 on account of the judgment which had been rendered in favor of J. Sheldon Toomer for $2,500, pending the appeal of said matter, and that the balance of $6,859.67 should be paid by the administrator on the claim of the bank against the Ogden estate. Following this, the decree contained this provision:

"It is hereby ordered, adjudged, and decreed that the validity of indebtedness in favor of the Calcasieu Trust & Savings Bank for the full sum of said note and principal, interest, and attorney's fees, less the above credit, is hereby recognized as a legal valid indebtedness of said estate."

On March 20, 1915, the bank filed in court its second provisional account showing that since the filing of its first provisional account it had realized $1,050 as the proceeds of the sale of the remainder of the land, and had collected $14.07 from another source, which with the $9,859.67 balance on hand, shown by its previous report, made $10,923.75. It showed certain disbursements made by it of $6,968.71 including a payment of $5,623.91 on the indebtedness due the Calcasieu Trust & Savings Bank, and showed a balance on hand of $3,955.03, $3,000 of which it was holding waiting the result of the appeal taken by it from the judgment for $2,500 in favor of J. Sheldon Toomer for attorney's fees. It asked that it be authorized to credit $930.03 on the indebtedness of the estate to the Calcasieu Trust & Savings Bank, leaving $25 on hand for incidental expenses. It prayed that service be had on the account, and that it be homologated and approved. The court made an order March 20, 1915, directing that notice of the filing of the account be published, and that J. Sheldon Toomer, attorney for absent heirs, be served with a copy thereof. Service was had on Mr. Toomer, and the notice was published in the local paper for ten days beginning March 20, 1915.

On the 17th day of May, 1915, the bank filed its final account and petition to be discharged as administrator. In this petition, the administrator showed a balance on hand when its second provisional account was filed of $3,926.51, and payments made since then of $1,532.50, including $1,500 paid J. Sheldon Toomer in compromise of the judgment which he had obtained. The petition showed a computation of the interest due the Calcasieu Trust & Savings Bank on the Ogden note, showed the payments that had been made thereon, and a balance due of $72,537.08, after deducting the final balance of $2,393.91 remaining in the administrator's hands. The last two paragraphs of the petition were as follows:

"Your petitioner alleges that no heirs of said Francis A. Ogden reside in Louisiana, and it is necessary that J. Sheldon Toomer, attorney for the absent heirs, be served with a copy hereof, and that notice of the filing hereof be published in a newspaper having general circulation in the parish of Calcasieu for a period of ten (10) days, and that all parties be required to file any opposition that they may have to your appearer's final account and the discharge of your appearer as administrator.

"Wherefore, premises considered, appearer prays that this its final account as administrator of the succession of Francis A. Ogden, be filed, that a copy thereof be served upon J. Sheldon Toomer, attorney for absent heirs, and that notice of the filing thereof be published as required by law for a period of ten (10) days; and that all parties at interest be required to show cause, if any they have, within ten (10) days from publication of said notice, why your appearer's final account should not be homologated, approved and made the judgment of this court, the funds distributed in accordance therewith, and the Calcasieu Trust & Savings Bank recognized as a creditor of said succession in the sum of seventy-two thousand five hundred thirty-seven and $8/100$ ($72,537.08) dollars, with interest at the rate of eight (8%) per cent. per annum, payable annually, from June 11, 1915, until paid, and ten (10%) per cent., upon the aggregate of principal and interest as attorneys' fees, and judgment against said succession for said amount, and that it be discharged as administrator of said succession, and be relieved from further responsibility as such administrator; for all necessary orders and decrees, full and general relief."

The petition was sworn to.

The court, on May 17, 1915, made the following order:

"Order.

"Foregoing prayer and annexed affidavits considered, it is hereby ordered that the final account of the administrator be filed and a copy thereof served upon J. Sheldon Toomer, attorney for absent heirs, and notice thereof published as required by law, and that all parties be required to show cause, if any they have, within ten (10) days from publication of said account, why the prayer of said final account should not be granted, said account homologated and approved, and the administrator discharged.

"Thus done and signed at chambers in the city of Lake Charles, Louisiana, on this the 17th day of May, 1915.
          "Alfred M. Barbe, Judge."

The sheriff made his return by showing service of the petition and final account by delivering a certified copy thereof to J. Sheldon Toomer, curator ad hoc, May 18, 1915. The following notice was published in the local paper each day for ten days, beginning the 18th of May, 1915:

"Notice of Final Account.

"State of Louisiana, Parish of Calcasieu, Fifteenth Judicial District Court, No. 2727, Probate Docket.

"Succession of Francis A. Ogden, Deceased.

"Whereas, Calcasieu Trust & Savings Bank, administrator of said succession of said parish, has filed its final account and tableau, accompanied by its petition, in the office of the clerk of said court, applying to have said account and tableau homologated and for its discharge as administrator in said above mentioned and entitled succession: Now, therefore, public notice is hereby given all parties interested, to show cause, if any they have, in writing, within ten

days from the publication thereof, why said application should not be granted, and said homologation and discharge made as prayed for.

"Witness the Hons. Winston Overton and Alfred M. Barbe, judges of said court, at Lake Charles, La., this 17th day of May, A. D. 1915.
          "Eugene J. Leveque,
          "Deputy Clerk of said Court. [Seal.]
"McCoy & Moss, Attorneys."

On June 11, 1915, the court rendered a judgment approving the second provisional account and final account, and discharging the administrator from all further responsibility, as follows:

"Succession of Francis A. Ogden.
No. 2327.

"Fifteenth Judicial District Court, State of Louisiana, Parish of Calcasieu.

"The second provisional account and in final account of Calcasieu Trust & Savings Bank, administrator of the above numbered and entitled succession, coming on for homologation after the entry of a preliminary default, same not having been set aside, no opposition having been filed thereto, it is hereby ordered, adjudged and decreed that the second provisional account of said administrator filed March 20, 1915, and the final account filed May 17, 1915, be and the same are hereby homologated, approved and made the final judgment of this court as all of the moneys coming into possession of the administrator have been properly disbursed, the said administrator is hereby discharged from all further responsibility herein.

"It is further ordered, adjudged and decreed that after applying the proceeds from the sale of the property mortgaged to secure payment of the note executed by said Francis A. Ogden for seventy-four thousand ($74,000.00) dollars, bearing date of February 20, 1914, due the Calcasieu Trust & Savings Bank, after payment of prior mortgages, liens, incumbrances and charges that the amount remaining due and unpaid, as shown by Schedule C annexed to and forming a part of the final account, to be the sum of seventy-two thousand five hundred thirty-seven and 8/100 ($72,537.08) dollars with eight per cent. per annum interest thereon from this date until paid, and ten per cent. additional upon the aggregate sum of said principal and interest as attorney's fees which amount remains due and unpaid by the succession of Francis A. Ogden, for which sum judgment is hereby rendered against said estate in favor of said Calcasieu Trust & Savings Bank."

[4] The legal rule of res adjudicata, which when given its broadest application prevents the reopening in a second suit of any question which might have been determined in a former proceeding between the same parties, is a rule of convenience and not one for the protection of any natural or inalienable right of persons or property, and a court of equity will not enforce the rule when the failure to have the question determined in the former suit was not due to any negligence or fault on the part of the party against whom the rule is invoked in the second suit and its enforcement will produce manifest injustice, unless the issue was clearly within the scope of the pleadings in the first suit.

[5] We think there are several sufficient reasons for refusing to sustain the plea of res adjudicata in this case. The question of appellee's fraud in reaping profit from the management of the estate as alleged by ap-

pellants was not one of the issues tendered by the administrator's application for approval of its final account and for its discharge. The account filed stated the amount for which the property was sold at the administrator's sale and various other amounts of collections made and proceeds received by the administrator for the estate, and the disposition made of such funds, and asked that the account be approved and the administrator discharged. We do not think this application put in issue the alleged fraudulent acts of the administrator in failing to sell the property of the estate at the highest obtainable price.

[6] The administration of an estate is a proceeding "in rem" and is binding upon all parties when notice of the proceedings is given as required by the law of the state in which the proceedings are had, but are binding only as to matters and things brought before the court and essentially within its jurisdiction.

In the case of Aurora City v. West, 7 Wall. 102, 19 L. Ed. 42, Mr. Justice Clifford, speaking for the court says:

"Where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed in rem judicatam."

Says Freeman:

"An adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to or essentially connected with the subject-matter of the litigation and every matter coming within the legitimate purview of the original action. * * * The general expression, often found in the reports, that a judgment is conclusive of every matter which the parties might have litigated in the action, is misleading. What is really meant by this expression is that a judgment is conclusive upon the issues tendered by the plaintiff's complaint. It may be that the plaintiff might have united other causes of action with that set out in his complaint, or that the defendant might have interposed counterclaims, cross-bills, and equitable defenses, etc. * * * But as long as these several matters are not tendered as issues in the action, they are not affected by it." Freeman on Judg. 249; Black on Judg. 732; Am. & Eng. Enc. of Law (2d Ed.) 766, 775, 784.

In the case of Griffith v. Godey, 113 U. S. 89, 5 Sup. Ct. 383, 28 L. Ed. 934, Mr. Justice Fields, speaking for the court, says:

"It is well established that a settlement of an administrator's account, by the decree of a probate court does not conclude as to property accidentally or fraudulently withheld from the account. If the property be omitted by mistake, or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises and take such action as justice to the heirs of the deceased or to the creditors of the estate may require, even if the probate court might in such case open its decree and administer upon the omitted property. And a fraudulent concealment of property, or a fraudulent disposition of it, is a general and always existing ground for the interposition of equity."

[7] If the order approving the final account and the discharge of the administrator can be held, under the broadest application of the rule, to have been an adjudication of the question in this case, and appellants can only obtain relief by attacking that judgment, we think the judgment can be attacked upon the broad ground that it was obtained by fraud.

It is a general principle of equity that a judgment at law procured in one state by the fraudulent conduct of the plaintiff, and which had the effect of depriving the defendant of a meritorious defense that he was not negligent in failing to urge, may be enjoined by a court of equity in another state which has acquired jurisdiction of the person of the plaintiff. Babcock v. Marshall, 50 S. W. 726; Cole v. Cunningham, 113 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538.

In the case of Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538, Chief Justice Fuller, of the United States Supreme Court, after quoting the provisions of the federal Constitution and the Revised Statutes of the United States as to the effect of a judgment of one state when relied upon in the courts of another state, says:

"This does not prevent an inquiry into the jurisdiction of the court in which a judgment is rendered to pronounce the judgment, nor into the right of the state to exercise authority over the parties or the subject-matter, nor whether the judgment is founded in and impeachable for a manifest fraud."

Further, in the same opinion, approving and commenting upon the case of Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152, the Chief Justice says:

"The Court of Appeals held that, while a judgment rendered by a court of competent jurisdiction could not be impeached collaterally for error or irregularity, yet it could be attacked upon the ground of want of jurisdiction, or of fraud or imposition; that the right of the plaintiff in the judgment was a personal right and followed his person; that, when the courts of Connecticut obtained jurisdiction of his person by the due service of process within the state, these courts had full power to pronounce upon the rights of the parties in respect to the judgment and to decree concerning it; that the jurisdiction of a court of equity anywhere to restrain suit upon a judgment at law upon sufficient grounds was one of the firmly established parts of the authority of courts of equity; and that it could not be held that a court of equity in one state had no jurisdiction to restrain such a suit upon a judgment of a court of law of another state."

[8] If the approval of the final account and discharge of the administrator can be held an adjudication of the administrator's right to retain the profits reaped by it from the sale of the property of the estate, that judgment was obtained by the fraudulent concealment in the report of the sale and application for discharge of the truth and was such fraud in obtaining the judgment as to subject it to attack in this suit. Griffith v. Godey, 113 U. S. 89, 5 Sup. Ct. 383, 28 L. Ed. 934; Thomas v. Hawpe, 35 Tex. Civ. App. 311, 80 S. W. 129; Aldrich

v. Barton, 138 Cal. 220, 71 Pac. 169, 94 Am. St. Rep. 43; Silva v. Santos, 138 Cal. 536, 71 Pac. 703.

[9] The plea of res adjudicata might also be overruled because the defendants in this case, who are domiciliary administrators of the estate, could not have instituted any suit or made any defense in the courts of Louisiana and therefore had no power or opportunity to be heard in that court, which is a fundamental requisite of due process of law without which no judgment is conclusive. Wilkins v. Ellett, 9 Wall. (76 U. S.) 740, 19 L. Ed. 586; Simpson v. Foster, 46 Tex. 618; Davis v. Phillips, 32 Tex. 567; Baker, Adm'r, v. Baker, Eccles & Co., 242 U. S. 394, 37 Sup. Ct. 152, 61 L. Ed. 394.

In our opinion the judgment of the court below should be reversed and the cause remanded for a new trial, and it has been so ordered.

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes